## RUSSELL et als. v. CONWAY et als.

A Court of Equity, upon bill filed, will compel an equitable set-off, when the parties have mutual demands against each other which are so situated that it is impossible for the party claiming a set-off to obtain satisfaction of his claim by an ordinary suit at law or in equity.

The insolvency of the party against whom the set-off is claimed, is sufficient ground for the exercise of the jurisdiction of the Court of Equity.

So held, when the claim against the party praying for a set-off was not a personal claim, but a judgment in rem against property belonging to him, while his claim against the other party was on a judgment.

In such a case, where the prayer of the bill is that the judgment against the property of the plaintiff may be satisfied, upon his crediting the judgment obtained by him against the defendant in another Court, the application for set-off must be made in the Court in which the judgment adverse to the plaintiff was entered, that Court having control over that judgment, and the plaintiff having the power to credit or satisfy the judgment held by him against the defendant.

As to lien of attorney, see ex parte Kyle (1 Cal. R. 331) and Mansfield v. Dorland, (2 Ib. 517).

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

Plaintiffs aver that on the twenty-third of February, 1855, they instituted in the United States District Court for the Northern District of California, an action against the bark Elvira, belonging to defendants, to recover damages sustained by a collision of said bark and a certain other vessel called the Madonna, the property of plaintiffs.

That defendant Conway appeared and answered to such action, as owner of the Elvira, defendant Brooks acting as his attorney, and procured the release of the vessel by giving bond to abide the decision and judgment of the Court; that one of the sureties on the bond was, at the time of its execution, insolvent; that the other was in embarrassed circumstances, and became insolvent soon afterwards, and that the pecuniary circumstances of the sureties were at the time well known both to Conway and his attorney: that plaintiffs recovered judgment in the sum of $1,640, and two hundred and eighty-six dollars costs; of which, owing to the insolvency of Conway and his sureties, they have been able to collect only the amount of twenty-five dollars.

That on the twenty-seventh day of February, 1858, defendant Conway commenced a suit in the Twelfth District Court for the County of San Francisco, against the bark Madonna, for damages arising out of

the same collision, and caused the vessel to be seized by the Sheriff; that plaintiffs appeared and answered to the action, as the owners of the Madonna, and that defendants recovered a judgment against the vessel for the sum of $1,226, and one hundred and twenty-two dollars costs, which judgment the Sheriff is proceeding to enforce, he having ample security in his possession.

That defendant Brooks claims to be the owner of the judgment, by virtue of an assignment from the defendant Conway ; that this assignment was collusive, and intended to defraud plaintiffs and defeat the right to offset.    Plaintiffs pray that the judgment of Conway against the Madonna may be satisfied, upon the entering a credit of the amount of it upon the judgment recovered by them in their action against the Elvira, which credit they offer to enter.

To this bill defendants demurred, on the ground—

1st. That the complaint does not state facts sufficient to entitle plaintiffs to the relief demanded.

2d. That the Court had no jurisdiction of the subject of the action.

The Court overruled the demurrer, and upon failure to answer, entered a decree for plaintiffs, and from this decree defendants appeal.

*B. S. Brooks* for Appellants.

I. We insist that the plaintiffs do not in their bill show any right to come into Court to set off these two judgments.

1. In the first place, *the plaintiffs do not show upon their part any sufficient interest in the subject of the controversy.*    It appears that both judgments are *in rem*—the one against " the Elvira," and the other against " the Madonna."    We are not seeking to enforce our judgment against the plaintiffs, but simply against " the bark Madonna," which was long ago sold to Meiggs & Pray.    The plaintiffs say that they, in their bill, show an interest ; let us see if they do.

2. It will be at once conceded that there is not any *direct allegation* in the bill, that our judgment or execution are against *the plaintiffs or their property ;* but this interest is sought to be inferred from the other allegations of the bill.    This course is open to two objections :   1. That the plaintiffs' case cannot be made out by inferences, but must be stated positively and distinctly ; and 2d. There cannot be any such

Russell *v.* Conway.

inferences legitimately drawn.  It is contended that the bill shows
either that the plaintiffs were owners, *or* that they were in some way
bound to indemnify the owners against this claim.  The very fact that
the bill is open to this *double* construction shows its *insufficiency*.  If
it was true that as principal or as surety the plaintiffs might sustain
such a bill, they must either allege that they are the principal debtors, *or*
they must allege that they are surety.  An allegation that they are either
principal or surety, is not an allegation that they are the principal nor
that they are the surety.  It is impossible that the plaintiffs should be
*both*, and if the bill is so drawn that neither one of these positions of
the plaintiffs is clearly and distinctly alleged, but *either* may be *infer-
red*, then the bill is clearly demurrable.

3. But I do not see that there is ANY *allegation of interest*.  In the
commencement of the bill the plaintiffs recite that, in *February*, 1855,
they filed a libel against the Elvira for a collision with the "Madonna,"
"the property of the plaintiffs."  This is the only allegation of prop-
erty in the "Madonna" (against which, it will be remembered, we
seek *alone* to enforce our judgment) which is to be found in the bill ;
and I submit to the Court, that it does not amount to such an allega-
tion.  This is the "*inducement*" of the complaint.  They are showing
how they got their judgment, and they were intending to set forth,
and did set forth, in fact, merely what were the principal allegations
of the libel which they filed.  That was the ground of that admiralty
suit, that *our* ship ran into *their* ship.  But if it should be construed
as an allegation of property in the ship, it is an allegation of property
in 1855, and not *now*.  Plaintiffs' counsel argued, that if it was their
property in 1855, the law *presumed* that it continued to be their prop-
erty.  Perhaps this is true in *evidence*, but not in *pleading*.  He
should allege in pleading that the ship is *now* their property, and then
proof that they bought her in 1850 would support the allegation, unless
we showed a change of property.  They must allege an interest in the
*Madonna now*.  For if it does not appear that they have some interest
in the property which we are seeking to subject to our execution, and
*which alone we can* subject to our execution, what right have they to
complain or to stop us ?

II. The plaintiffs fail to show any equitable reason for setting off these judgments.

It is scarcely necessary to argue before this Court, that setting off claims in equity is not by any means a matter of course. On the contrary, unless there are some equitable reasons irrespective of the mere existence of independent demands, they cannot be set off in equity. Story on Equity Jur., sec. 1435 to 1437 ; Green v. Darling, 5 Mason, 201 ; Pierson v. Meary, 3 A. K. Marsh, 6 ; Hackett v. Counett, 2 Eden, 73 ; Robbins v. Halley, 1 Munro, 134 ; Markam v. Todd, 2 J. J. Marsh, 365 ; Allunt v. Winn, 3 J. J. Marsh, 304 ; Beall v. Squires, 3 Munro, 375.

Our statute gives a party a right to set off certain claims at law or in equity, and it might well be argued that the subject was exhausted ; that the Legislature had seen fit in its wisdom to declare the cases in which set-off should be allowed, and that to extend the relief or right beyond this would be a usurpation of the powers of the Legislature. It is a principle well settled, that equity in regard to set-offs, as in other respects, follows the law, and only interferes to carry out the intention of the statute by applying the same rule to cases which are within the letter. But when the statute has laid down certain broad, general principles, by which it describes and designates the classes of demands which ought to set off or compensate each other, it is going far beyond the province of a Court of Equity to apply this rule to cases totally distinct in principle. As Mr. J. Ashhurst says : " Where cases are new in *principle*, it is necessary to have recourse to legislative interference, but where the case is only new in the *instance*, the Courts can apply the recognized principle.

It appears by the allegations of the bill, that the owners of both vessels claimed damages for the collision—both obtained judgments. The plaintiffs, Russell & Co., tried their case first, and got judgment. Why did they proceed to the trial of Conway's case in the Twelfth District Court ? They could have plead the prior adjudication in the United States District Court, and there is no question, and was then no question, that such a plea was a complete bar ; but they chose to run their chance in that Court of trying the case over again, in order to obtain a personal judgment against Conway upon their counter claim. They

Russell *v.* Conway.

tried it, both parties consenting, and the plaintiffs here got beat, and Conway obtained judgment *against them.*

Now was not this a waiver of the judgment in the United States District Court? Suppose the plaintiffs had obtained a judgment against Conway for a different amount in the Twelfth District Court: could they have enforced both judgments, or could they have elected? I think not. It seems to me that the plaintiffs, by consenting to try the matter over, completely waived their judgment in the United States District Court, and have no right to set it up, or plead it in any shape.

If the plaintiffs had filed this bill in the United States District Court where the larger judgment is, the case would have been different, for that Court would not have been estopped by the decision of another Court, and particularly not by the decision of a tribunal of a different or foreign jurisdiction; and it is well settled that the application must be made in the Court where the plaintiffs' judgment is. Hicks *v.* Ross, 11 Barb. S. C. R. 481.

This is not a case in which a Court of Equity would decree a set-off; but if it was, I do not understand that it is a *right.* It is a matter entirely in the discretion of the Court, and the plaintiffs had no vested interest in, or lien upon, the judgment. It is not a *right,* the enforcement of which they have a right to *demand,* but a relief which they pray from the consideration of the Court. Davidson *v.* Gerghayer, 3 Bibb, 250.

III. A point much debated in the Court below was the lien of the attorney Brooks (also the assignee) for his costs. The Court below was inclined to allow it to the extent of disbursements, if it should appear that these were made by the attorney, but held that *prima facie,* these were made by the party. But I think the lien of the attorney in this State should be held to be much more extensive. In England, and in those States where there is a rate of counsel and attorney's fees, which is fixed by law, and which are recovered as part of the judgment, there is some reason in limiting the attorney's lien to that sum. But in this State there is no sum recovered for attorney and counsel fees. It is left entirely to agreement between attorney and client what they shall be, and the amount of the lien is not, therefore, limited by law. It therefore exists to the whole extent of the attorney's claim, or it does not exist at all.

*Whitcomb, Pringle & Felton* for Respondents.

I. The books are full of cases where one judgment is set off against another on motion; but where the claim of a third party is interposed, the remedy by motion is insufficient, and a bill of equity is necessary to dispose of the rights of all parties. Hence the jurisdiction in this case. Simpson *v.* Hart, 14 John. 74; Gay *v.* Gay, 10 Paige, 369; Barber *v.* Spencer, 11 Paige, 517.

II. The appellants contend that the complaint does not show any sufficient interest on the part of the plaintiffs in the subject of the suit, because it does not appear with sufficient certainty whether the plaintiffs are the owners of the Madonna, the bark against which the judgment was obtained. But it is clear that the allegations of the complaint admit of no other construction than that the suit of Conway was brought against the bark of the plaintiffs, and that by virtue of that suit they are bound by their property to the payment of the judgment. The complaint avers property in the Madonna on the twenty-third of February, 1855; suit brought against said bark on the twenty-seventh of February, 1855; and that the present plaintiffs came in and claimed said bark and defended the action; and afterwards, that " they are unable to collect their judgment against Conway by reason of his insolvency and that of his bondsmen, while they are bound for payment of his judgment." The natural and only meaning and effect of these averments taken together is, that the bark Madonna was the property of these plaintiffs when the claim of damage for the collision attached to her. *After that it is quite immaterial whether* she was sold or not, for under the decision of this Court, in the case of Meiggs & Pray *v.* Scannell, no sale could divest the lien; nothing was transferable except the surplus beyond the judgment.

The case presents all that is essential to the set-off of a Court of Equity. It is true, there is not identity in name, because one judgment is against the bark Madonna and the other judgment is against Conway and his sureties. But the parties in both cases are substantially the same, identical in substance and in truth. The Courts have always disregarded mere names in the matter of parties to a suit. In Barrett *v.* Barrett, 8 Pick. 341, a judgment in favor of the Judge of

Russell *v.* Conway.

Probate in a suit upon a probate bond brought in his name for the benefit of a legatee against an executor and his sureties, was set off against a judgment recovered by the executor in his individual capacity against the legatee.   So it was held in Driggs *v.* Rockwell, 11 Wend. 504, that a party had a right to set off a demand against the real plaintiff for whose benefit the suit was brought, although he was not the nominal plaintiff on record.   See also, cases cited in 8 Pick.

Every judgment against the property of a party is really a judgment against him under our system; except in cases of fraud, a judgment has no reach beyond the property of a party, it proceeds against his lands or goods; and this judgment which is against his vessel, his property, is substantially and actually a judgment against him.   *It binds him by his property.*

When the counsel for the appellants objects to the set-off for want of mutuality, he is confounded by terms.   All that a Court of Equity requires in decreeing a set-off is to be assured of the substantial identity of the parties whose rights are extinguished the one by the other, and their interest in the claims that are set off.   In this case an absolute mutuality would exist as soon as it was ascertained that there is an *equivalent* in the remedy on both sides.

III.   The Court below was the proper tribunal.   The party should proceed in the Court where the judgment against him is obtained. The reason and propriety of this is obvious.   *That* judgment is the one which he is seeking to control.   He comes into Court with an offer to satisfy his own judgment, as the condition of the relief he demands against the other.   His remedy is sought in the Court whose judgment he wishes to affect by the suit.   The other judgment is under his control, and he is ready and offers to enter a credit upon it, as a plaintiff would offer a deed to be cancelled, or a sum of money to be paid for specific performance, or any condition within his power to be performed, dependent upon the decree of the Court granting or refusing his prayer.   See Cook *v.* Smith, 7 Hill, 186.   See also, Ross *v.* Hicks, 11 Barb. S. C. R., p. 481.   The counsel for the appellants has apparently been misled by the latter case.   He cites it in his brief to sustain a doctrine quite opposite to what is the real doctrine of the case.

Russell *v*. Conway.

IV. As to the equitable grounds upon which the plaintiffs rely for a set-off, the two judgments arise out of the same subject matter and the same controversy. The defendant, Conway, has avoided the payment of the decree against him by giving straw bondsmen, and by reason of such fraudulent action the judgment held by these plaintiffs is worthless, whilst that against them is good. Surely it would be difficult to present a stronger case to a Court of Equity. The misfortune of the plaintiffs' position is, that their bark was held by the process of the State Court, while in the Court of Admiralty they could not prevent the defendant, Conway, from liberating his vessel by substitutive bondsmen of his own choice. If, as the appellants say, a set-off is in the discretion of a Court of Equity, there never was a juster occasion for the exercise of that discretion.

Nor is there any more force in the objection of defendants, that the plaintiffs have waived their decree in admiralty by not pleading it in bar of the action in the Twelfth District Court, thereby assenting to another trial. Indeed, such a position can hardly be gravely advanced. It is asserting, in other words, that the plaintiffs have lost their decree by not interposing it as a defense to the other action; that their decree has thereby become satisfied, or abandoned, or extinguished by some mysterious process. The truth is, all that the plaintiffs have lost is the opportunity of *defeating* the first action, and now they are obliged to come and satisfy the judgment obtained in it. If they had pleaded their decree in admiralty *juris darrein continuance*, which was the only way they could have pleaded it, but which they were not obliged to do, they might have prevented a recovery against them and thus restrained the whole amount of their decree to make what they could of it. Now they are forced to admit the validity of the judgment against them and to pay the amount by a deduction from the amount of their decree.

TERRY, C. J., after stating the facts, delivered the opinion of the Court—BALDWIN, J., and FIELD, J., concurring.

In support of his first ground of demurrer, appellant contends that the complaint does not show plaintiffs' interest in the subject of the controversy—the judgments being *in rem*, one against the Madonna,

Russell *v.* Conway.

and the other against the Elvira (the defendants having no personal judgment against the plaintiffs)—and that it does not sufficiently appear that the Madonna is the property of plaintiffs, or that defendants are seeking to enforce their judgment against plaintiffs.

The argument in support of this position is based on a supposed transfer of the Madonna by plaintiffs to third parties, and a replevin suit instituted by those parties to recover the vessel from the hands of the Sheriff, which facts no where appear in the record of this cause, and therefore, are not matters for our consideration.

The complaint shows that the Madonna was, in February, 1855, the property of plaintiffs ; that they appeared and defended the suit against the vessel as owners, and there is nothing in the record to raise a presumption that they are not now the owners of it.    The complaint shows a judgment binding on plaintiffs' property, and which they must satisfy in order to release this property.    This is, we think, a sufficient showing of interest in the subject.

It is also contended that plaintiffs have not shown any equitable reason for setting off these judgments.    But we think it would be difficult to find a case addressing itself more strongly to the consideration of a Court of Equity.    The bill charges, and the demurrer admits, that the parties each recovered a judgment *in rem* against the property of the other ; that defendant, by giving a bond with sureties which he knew to be worthless, deprived plaintiffs of their lien on the property, against which he recovered judgment ; that defendant, as well as the sureties on his bond, are insolvent ; and that a fraudulent assignment of the judgment had been executed for the purpose of defeating plaintiffs' right to set off their decree against it.    Under these circumstances it becomes the imperative duty of a Court of Equity to interfere to prevent the consummation of a fraud.

In the case of Simson *v.* Hart, (14 John. 74) the facts of which are similar to those contained in this record, the Court says :  " Nothing could be more unjust than to leave to the respondent the power of collecting his judgment of the appellant, against which, from the insolvent condition of the respondent and the embarrassed state of his father, the appellant could not indemnify himself by collecting any part of his judgment from them ; and although it is difficult to settle precisely

the extent of the jurisdiction of the Court of Chancery, one of its acknowledged and most salutary attributes consists in the power to put a stop to proceedings injurious or unconscientious. I have no hesitation in saying, that chancery had original and rightful jurisdiction of the suit, and was fully authorized, by a series of adjudged cases, in issuing a perpetual injunction against the respondent's suing out or executing an injunction on his judgment, upon the appellant's entering satisfaction for so much as the respondent's judgment amounted to, on his judgment; or, which would have produced the same result, decreeing that the respondent should acknowledge satisfaction of record upon the like terms."

There is no force in the objection that the judgments are not in the same right. It is well settled that although the demands, as being joint and several, are not, strictly speaking, due in the same right, yet if the legal or equitable liabilities or claims of many become vested in, or may be urged against one, they may be set off against separate demands, and *vice versa*.

In Gay v. Gay, (10 Paige, 376) the Chancellor held: " If an equitable right of set-off exists, while the parties have mutual demands against each other, because the debt due to the party claiming the set-off is so situated that it is impossible for him to obtain satisfaction of such debt by an ordinary suit at law, or in equity, to recover the same, this Court, upon a bill filed, will compel an equitable set-off of one debt against the other. And the insolvency of the party against whom the set-off is claimed is a sufficient ground for the exercise of the jurisdiction of the Court of Chancery, in allowing a set-off in cases not provided for by the statute, although the demands on both sides are not liquidated by judgment or decree, so as to authorize a set-off upon a summary application, by motion. (See Lindsey v. Jackson, 2 Paige Rep. 581, and cases there referred to.) And where there are cross demands between two parties, of such a nature that if both were recoverable at law they would be the subjects of legal offset, then if either of the demands is matter of equitable jurisdiction only, the set-off may be enforced in equity." (Clark v. Colt, 1 Craig & Phil. Rep. 154. See, also Barbour v. Spencer, 11 *Ib*. 518.)

Appellant objects that the plaintiffs failed to set up their judgment

Russell *v.* Conway.

recovered in the Federal Court, *puis darrein continuance* in bar of defendants' action, and insists that, by failing to do so, they waived their rights under the judgment.    It is difficult to perceive in what manner appellants were prejudiced by the neglect complained of, and we know of no rule by which such neglect can amount to anything more than a waiver of the right to insist on their judgment as at bar.    It certainly cannot affect the validity of the judgment, or plaintiffs' right to set it up in another proceeding.

The objection that the right to an equitable set-off has been lost by laches of the plaintiffs, and by their attempts to defeat defendants' execution, is supported by facts which appear only in the brief of appellant, and not in the record.

The objection that the judgment was assigned before filing this bill is answered by the fact that upon the record the assignment is admitted to have been fraudulent, and certainly the defendants can claim nothing in a Court of Equity by reason of such an assignment.

This disposes of the objections to the equity of the bill.    The demurrer to the jurisdiction of the Court is equally without merit. The plaintiffs' application was made to the Court having control of the judgment against them, which they desired to have cancelled and satisfied.    The judgment in the Federal Court was under their control, and they could themselves direct as to its disposition, while the judgment against them could only be controlled by the Court in which it was rendered.

" Where judgments obtained in different Courts are to be set off, the moving party must go into the Court in which the judgment *against* himself was recovered."    (Cook *v.* Smith, 7 Hill, 186 ; Ross *v.* Hicks, 11 Barb., S. C. 481.)

The only remaining question raised by the appellant is as to the lien of the attorney for his costs, which question was settled by this Court in *ex parte* Kyle (1 Cal. R. 331) and Mansfield *v.* Dorland (2 *Ib.* 517) and we have no desire to disturb those decisions.

Judgment affirmed.