## NAGLEE v. PALMER et. al.

As a general proposition, the mere existence of cross demands will not justify a set-off in a Court of Chancery. There must be some peculiar circumstances, based upon equitable grounds, to warrant the Court in interfering.

To authorize a set-off at law, the debts must be between the parties in their own right, and must be of the same kind and quality, and be duly ascertained or liquidated—they must be certain and determinate debts.

Where the plaintiff filed his bill as receiver of an insolvent firm, to foreclose a mortgage given to plaintiffs in that capacity to secure a certificate of deposit for one hundred thousand dollars, originally deposited by the receiver, and defendants admitted the debt, but claimed that the amount is to be distributed pro rata among the creditors of the insolvents, whom the plaintiff represents; that the claims of the creditors have been filed and reported upon; that defendants are large creditors of the insolvents, and that they will, upon the distribution of the assets, be entitled to fifty thousand dollars as their dividend; and that defendants have advanced a further sum to the former custodians of the assets of about fifty thousand dollars, which they pray to have ascertained, and the whole amount set-off against the certificate of deposit, and, until then, that plaintiff be restrained: Held, that a Court of Equity will not compel them to pay the money into Court, which they would immediately be entitled to receive back; nor will it put them to the cost of so large a judgment, but will order an account and allow the set-off.

The execution and delivery of the certificate of deposit by defendants, changed their character from being custodians of the funds to that of mere debtors of the insolvents.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

The plaintiff filed a bill in chancery to foreclose a mortgage given to the plaintiff, by description, as receiver, to secure a certificate of deposit for about one hundred thousand dollars. The answer sets out, that a suit is pending in the Fourth District Court, upon a bill filed by Adams and Haskell et al., alleging insolvency, for a dissolution of partnership, the distribution of assets among the creditors, and a receiver. That the said Naglee was appointed, and is receiver; that the certificate of deposit was given for money belonging to Adams & Co., which money is to be distributed to the creditors pro rata; that by an order of the Fourth District Court, the creditors of Adams & Co., were required to file their claims for allowance, within a given time, before a referee appointed by the Court; that the said referee has made his report, and from the report it appears there will be a dividend out of the assets of about ten per cent. to all the creditors; that the defendants, who are copartners, under the firm-name of Palmer, Cook & Co., are creditors of Adams & Co. to the amount of five hundred and sixty thousand dollars, which has been allowed by the referee in his report.

The answer further sets up, that Roman, Cohen and Jones, were once assignees of Adams & Co.; that they were in fact custodians of the funds of Adams & Co., appointed by the Court, and in the care of the estate committed to them, they were

compelled to expend large sums of money, amounting in the whole to about fifty thousand dollars; that they were compelled to deliver up the custody of the estate to the present receiver, before having their accounts adjusted, or any allowance made them for said expenditures, and not having the means to supply the deficiency created by these expenditures, the amount was advanced by the defendants, who are, therefore, legally and equitably entitled to the amount of said allowance when the same shall be made; that by order of the Judge of the Fourth District Court, a referee has been appointed to inquire into, and report upon, the amount of said claims, and that said reference is now pending.

The answer prays an order restraining the receiver from proceeding to a decree of foreclosure, until the several amounts due the defendants are ascertained, so as to be equitably set-off. The Court refused to allow the defendants to prove the facts set up in the answer, to which refusal defendants excepted.

A decree of foreclosure was granted in the Court below for the full amount of the certificate of deposit. Defendants moved for a new trial, which being denied, they appealed.

*Solomon Heydenfeldt* for Appellants.

The money in the hands of Palmer, Cook & Co., is the money of Adams & Co., and Naglee cannot set up any private claim to it. It was a trust-fund, known as such to all the parties.

Equity will follow a trust-fund, when its identity can be traced. 2 Story's Eq. J., §§ 1,258, 1,257, 1,259.

If the decree in this case is enforced, it presents the case of money being forced from the defendants, which must be immediately paid back to them, upon the doctrine of equitable set-off. A Court of Chancery will always order an account, and until it is taken, suspend the decree of foreclosure. Lanesboro *v.* Jones, 1 P. Wm., 325; Ex Parte Quintin, 3 Vesey, 248; Hulme *v.* Mugglestone, 3 M. & W., 30; Dunn *v.* Hatch & Nelson, 15 Ala.

In Ex Parte Twogood, 11 Vesey, 517, there was a bankruptcy of one partner, and an attempt to set-off a separate debt against a joint debt, to the extent of the interest of the bankrupt partner. Lord Eldon clearly admits the equity, but denies it on the ground that the whole proceedings in settling the estate might be continually interrupted by similar attempts. But here, that objection to the exercise of an admitted equity, cannot prevail, because the account has already been taken of the debts of the insolvent firm, and each sum, therefore, which reaches the receiver's hands, is the subject of a dividend to the creditors.

Also, no such objection can lie to the amount paid for Roman, Cohen, and Jones, the custodians of the fund; for whatever is to be allowed to them, is chargeable directly upon the fund in the

receiver's hand, and defendants are creditors of the fund in Court, and must be paid in full.

*W. Duer* for Respondent.

Independently of statute, there is no such thing in English or American jurisprudence, either at law or in equity, as a set-off of cross and unconnected demands. If A and B were mutually indebted to each other on separate and independent contracts, neither could set-off his debt, in an action brought by the other, but his only remedy was to bring a separate action. Chancery might, in some cases, give relief: in cases of mutual credit, or on the ground of some peculiarly equity connected with the subject-matter of the action; but the mere existence of a cross demand did not constitute such an equity. Green *v.* Darling, 5 Mason, 201; 1 Edwards' Ch. Rep., 402; 2 ib., 73; 2 Story's Equity Jurisprudence, § 1433 et seq.

In the case of Green *v.* Darling, above cited, Judge Story says: "There is great difference between the case of an equity attaching to the very demand assigned, and an equity to set-off an unconnected debt." 5 Mason, 206.

And again he says (ib. 213), "In the most favorable light in which the jurisdiction of Courts of Equity can be viewed, the mere existence of distinct debts, without mutual credit, did not give a right of set-off." This operated with peculiar hardship in cases of bankruptcy, for the assignees could recover the whole debt, and the debtor could only claim a dividend for any cross demand he might have. Yet until this evil was remedied by statute, equity gave no relief. 2 Story's Equity, § 1433.

By statutes in England, as well as in all, or nearly all, of the States of the American Union, cross demands may be set-off. But the defendant can only set-off a demand due him by the plaintiff, and not a demand due him by a third person. Here the defendants seek to set-off a demand against Adams & Co., against a demand of Naglee's, on a contract made with Naglee.

It is contended, however, that there is here an equitable set-off, independent of the statute. It is unnecessary to cite additional authorities to show that, on this subject, except in cases of mutual credit and where there is some peculiar equity growing out of the character of the assigned demand, cross claims cannot be set-off in equity in any other cases than those provided for by statute. The very question raised here has been repeated decided in the case of executors where suit is brought on contracts made with them. And it is well settled, that a debt due from a testator cannot be set-off against a demand accruing to the executor after the testator's death. Willes' Rep., 103, 264; 4 Johns. Ch. R., 11; 2 Hill, 213–14, and cases cited in note; 6 Barb., 230; 8 Wend., 541; Crew *v.* Williams, 2 Bibb, 263; Barbour's Set-off, 61. Neither can there be allowed in a forclosure

suit any set-off which would not be allowed in an analogous case at law. 7 Paige Ch. R., 211.

The remarks of Lord Eldon, in Ex Parte Twogood, 11 Vesey, 517, are strictly applicable to the present case, and the greatest confusion would follow if every person having a claim against the fund, on its final distribution could be allowed to withhold moneys due or belonging to the receiver until a final settlement. Indeed, the execution of the trust would be utterly impracticable, and the creditors would never get a dollar. Already (since the filing of the referee's report, which was only partially affirmed), there are oppositions of debtors, disputed claims on the fund, and an appeal to the Supreme Court. It is impossible to foresee to what lengths these proceedings may be protracted, or to what extent the assets may be absorbed in litigation. The final dividend, under favorable circumstances, will not probably be declared for some years. All that the defendants, Palmer, Cook & Co., would be entitled to, if their mortgage were now paid, would be their distributive share of the mortgage-moneys. These moneys no more belong to them than to any other creditor. The probability that the ultimate dividend may be equal to the sum due on the mortgage, cannot authorize them, by retaining moneys belonging to the fund, to deprive other creditors of their immediate right to their *pro rata* share of those moneys. To hold otherwise, would be to reward by a premium the unfaithful depositary. No possible injury can accrue in this way to the defendants. If, at the time of the payment of the mortgage, no dividend has been declared, and is then payable, there is no shadow of justice in their claim, that the moneys deposited with them, shall remain in their hands, subject to the vicissitudes and hazards of banking in California. If, on the other hand, a dividend shall have then been declared, and be payable, that dividend will be applicable to the payment of the mortgage without the aid of the Court.

MURRAY, C. J., after stating the facts, delivered the opinion of the Court—BURNETT, J., concurring.

The question raised by the statement of this case, is, whether the defendants had shown such a state of facts as entitled them to offset their claims upon Adams & Co. against the claim of Naglee, in this suit; or, whether they could be compelled to pay the same, leaving them to their legal remedy for whatever might be due from Adams & Co. to them.

The doctrine of set-off is said to have been borrowed from the doctrine of compensation in the civil law, and resembles it in many respects. To authorize a set-off at law, the debts must be between the parties in their own right, and must be of the same kind or quality, and be clearly ascertained or liquidated; they must be certain and determinate debts.

Before the passage of any statute on this subject in England, set-offs were unknown in Courts of Law, although the Court of Chancery claimed to exercise this power in peculiar cases, as grounded on equitable principles. After the passage of various acts of Parliament on this subject, this jurisdiction was exercised alike by Courts of Law and Equity; the latter claiming the right to go farther in certain cases than the former, notwithstanding the rule, that Courts of Law and Courts of Equity were both compelled to follow the statute. Since that time, the rule has been modified by the Courts of England and the United States, and the cases in which Courts of Equity will entertain jurisdiction for the purpose of allowing a set-off, have been greatly multiplied.

As a general proposition, the mere existence of cross demands will not justify a set-off in a Court of Chancery; there must be some peculiar circumstances based upon equitable grounds, to warrant the Court in interfering.

"If, however," says Mr. Justice Story, in his work on Equity Jurisprudence, "there are cross demands between the parties of such a nature, that, if both were recoverable at law, they would be the subject of a set-off; then, and in such a case, if either of the demands be a matter of equitable jurisdiction, the set-off will be enforced in equity. As, for example, if a legal debt is due to the defendant by the plaintiff, and the plaintiff is the assignee of a legal debt due to a third person from the plaintiff, which has been duly assigned to himself, a Court of Equity will set-off the one against the other, if both debts could properly be the subject of a set-off at law." The learned Judge cites the cases of Clarke v. Cost, 1 Craig & Phillips, and Williams v. Davies, 2 Simons; both of which, sustain the text.

It may be granted, that if this were an action at law, and not a proceeding in chancery, that the defendant would not be entitled to his set-off. But this is a proceeding in equity; the defendants have been brought in by the plaintiff, and it is competent for the Court to administer that substantial relief to which the parties show themselves entitled.

The fund in the hands of the defendants belonged to the assets of Adams & Co.; they were indebted to the defendants in a large amount, besides the amount advanced to Cohen, Roman and Jones, which was an undoubted charge against the funds in the hands of the receiver; the assets had been marshalled, the claims ascertained, and a dividend declared. Where, then, was the necessity of proceeding against the defendants, for the sum of one hundred thousand dollars, or, rather, why should a decree of foreclosure have been rendered against their property for that sum, when it was evident, that their share of the dividend, together with the amount due on account of the former receiver, would very nearly, if not entirely, equal the whole claim of the

plaintiff, and when the true amount due could have been ascertained without the least inconvenience. A Court of Equity, like a Court of Law, will not compel a party to do a vain act, which it would most certainly be doing, if it should order a party to pay money into Court, which he would be entitled to receive back immediately, to say nothing of the expense consequent upon so large a judgment, and the pecuniary inconvenience it would involve.

There is no similarity between the facts of this case and those of Ex Parte Twogood, 11 Vesey, in which Lord Eldon admitted the equity of the claim attempted to be offset, but denied it on the ground that the whole proceeding in settling an estate might be continually interrupted by similar attempts. In this case, the equity of the defendant's claim being admitted, there could be no such objection as that taken by Lord Eldon, because of the fact that an account of the debts and assets has already been taken. The receiver is ready to proceed to distribution, and no delay would ensue by allowing the defendants an offset, to the amount of their proportion of such dividend.

In a case like the present, the Court should have ordered an account, and have suspended the decree until it was taken; particularly in view of the claim of the defendants for the amount advanced to Roman, Cohen, and Jones, for the benefit of the firm's assets. Nelson and Hatch *v.* Dunn et al., 15 Ala. The respondents contend, however, that the defendants are the mere bailees of the Court; that they cannot be allowed to set up this defence, or dispute the right of the officer of the Court to the amount due. Such is not their character; whatever it may have been at one time, it was changed when the receiver loaned them the sum of one hundred thousand dollars, and took their certificate of deposit, and a mortgage to secure the same. They then became the debtors of Adams & Co., or their representative, and are to be regarded in this transaction as private individuals, and not as the bailees of the Court, or custodians of its funds.

Neither can the position be maintained that the debt due from Adams & Co. to Palmer, Cook & Co. cannot be offset in this suit, because Read was not a party to that debt, or interested in it. Read has mortgaged his property to secure the debt from Palmer, Cook & Co. to the plaintiff; he is interested that his property should not be sold to pay the same, and the Court, having all the parties before it, ought to dispose of all the interests involved in one suit, and not turn them over to their separate actions against each other.

Judgment reversed, and cause remanded.