## WILLIAM R. DUFF v. HOBBS *et als.*

ACTION on an appeal bond, in which defendants claim the right to offset the bal ance of a decree in a foreclosure suit, which they have purchased and now hold against James R. Duff and James T. Ryan, and eleven other defendants in that suit, upon the ground that James R. Duff and James T. Ryan are the parties beneficially interested in the claim in suit in this action, and that they and the other eleven defendants in the decree sought to be offset are insolvent: *Held,* that the set-off cannot be allowed, as well because of the provisions of section forty-seven of the Practice Act, which require a counter claim to be between parties to the record, between whom a several judgment might be had in the action, as of the provisions of sections one hundred and seventy-six and one hundred and ninety-nine, which would require a judgment for the excess to be given against the plaintiff, although as against him it is not claimed that defendants have any demand.

*Held, further,* that the matter set up in the answer is not a defense, legal or equitable, in any other sense than as being purely an *offset,* and therefore such matter cannot be relied on as an *equitable* defense, independent of and beyond the right of *offset* given by the Practice Act.

*Naglee* v. *Palmer* (7 Cal. 543) and *Russell* v. *Conway,* (11 Cal. 93) upon this subject of offset, and the distinction, if any, under our system between actions at law and in equity, commented on.

APPEAL from the Fourth District.

Suit against the sureties upon an appeal bond given in the case of *Wm. R. Duff* v. *A. K. Fisher et al.*

On the twenty-third day of February, 1856, A. K. Fisher held a mortgage on certain real and personal property situate in Humboldt county, and suit was then pending against the mortgagors for a foreclosure.

On that day, Fisher, the mortgagee, and plaintiff entered into an agreement, under seal, with respondent Wm. R. Duff, who was not a party to the mortgage or suit, wherein respondent promises to pay Fisher $10,000, and Fisher agreed to receive the same as the purchase money of part of the mortgaged premises. The agreement also provided that in case Fisher had to buy the property at the foreclosure sale, he would convey it—that is, the Eureka Mill and steam-tug " Mary Ann "—to respondent. Fisher became the purchaser at the sale, and failing to comply with the agreement, respondent, on the twenty-second day of July, 1858, commenced suit to enforce a specific performance.

It was decreed in that suit, on the seventeenth day of June, 1859, that Fisher and his fraudulent grantees should convey the mill and steam-tug to respondent, and a judgment was awarded for the earnings of the tug. The undertaking on which this suit is brought was given to suspend the execution of that decree and judgment.

The appellants procured, a few days before the commencement of the present suit, an assignment of the decree of foreclosure, and in their answer seek to offset any balance that may be due thereon in this action to defeat a recovery by respondent—alleging the balance to be about $17,000.

It is alleged in the answer that the suit in which the appeal bond was given was upon a contract which is set forth; that Fisher entered into the contract with James R. Duff and James T. Ryan, but that, at the request of the two latter, the name of William R. Duff, plaintiff herein, was inserted in the contract as the party contracting with said Fisher, instead of the real parties, to wit: said James T. Ryan and James R. Duff; that the whole interest in the contract was in them, and that William R. Duff was a naked trustee for them; that the suit brought in the name of William R. Duff upon that contract, and in which suit the appeal bond was given, was brought by the procurement of James T. Ryan and James R. Duff in fact, and that the whole interest in the suit was vested in them. So as to the judgment rendered in the suit, and so also as to the appeal bond on which this action is based. And it was further averred, that this action was brought at their instigation; that it belongs to them, and is being prosecuted for their exclusive benefit and advantage.

The answer further alleges, that James T. Ryan and James R. Duff, the debtors in the counter claim, and the real owners of the principal claim, and all the other debtors in that counter claim, are utterly insolvent, and have no property out of which the balance of the debt can be made; and it is prayed that the amount admitted to be due upon the appeal bond, the principal claim, may be liquidated by endorsing it upon the offset, in part satisfaction thereof.

The questions passed upon by the Court below arose upon objections to the defendants' testimony.

The defendants offered in evidence a certified copy of a judgment roll, containing, among other things, the foreclosure decree alleged in the answer; also, a certified copy of the order of sale and Sheriff's return, showing *prima facie* the balance alleged of $17,248.89 due on the tenth of October, 1857.

The plaint'ff objected to the introduction of this evidence upon the following grounds, among others:

1. That said papers are irrelevant as against the plaintiff, Wm. R. Duff, for the reason that he was not a party to said action.

2. That the defendants are estopped by the judgment roll and decree in the case of *Wm. R. Duff* v. *Fisher et al.*—the suit in which the appeal bond was given—for the reason that they undertook and promised that if the judgment should be affirmed they would pay to Wm. R. Duff the amount of said judgment.

3. That by the judgment roll in the case of *Wm. R. Duff* v. *Fisher et al.*, introduced in evidence by the plaintiff, the issue as to whether Wm. R. Duff was the real party in interest in that suit was tendered and disposed of in said original suit, and that these defendants have no greater rights than their assignors, and are bound by said judgment and decree.

4. That the same are irrelevant.

5. That when taken together, the papers show no money judgment against any one; and that the said record was irrelevant, incompetent and inadmissible as against this plaintiff.

The Court sustained the objections, and excluded the testimony, defendants excepting.

Plaintiff had judgment; defendants appeal.

*O. L. Shafter*, for Appellants.

I.   It is said that defendants are estopped by the judgment roll and decree in the case of *Wm. R. Duff* v. *Fisher et al.*—the suit in which the appeal bond was given—for the reason that they undertook and promised that if the judgment should be affirmed they would pay to Wm. R. Duff the amount of said judgment; and therefore that they are estopped from saying that the beneficial interest in the bond was or is in anybody else than him.

II.   That the bond is conclusive upon all the matters which it

contains, there is no doubt.   But in alleging that the whole bene-
ficial interest in the bond is vested in James T. Ryan and James
R. Duff, we open up a question which the bond does not raise, and
to which it does not make the remotest allusion.   The purpose of
the allegation was not to impeach the bond, nor to vary its language,
nor to affect its construction, nor to displace any fact it created or
recited.

It may be said that the point of the estoppel presented by the
bond is found in the defendants' agreement to pay to Wm. R.
Duff, plaintiff herein; and this is probably the true meaning of the
objection.   This line of argument, if followed out, would lead to
singular results.   If we are bound to pay to Wm. R. Duff, we are
bound to pay him in money, as the agreement itself neither pro-
vides nor contemplates any other currency than the coin of the
realm.   The result is, that we could not offset the bond by a coun-
ter claim due from Wm. R. Duff to us on its face.

Again, if we are bound, as by contract, to pay to Wm. R. Duff,
we are, by parity of reasoning, excused by the contract from mak-
ing payment to anybody else; and the result is, that we could de-
feat an action by his assignee on the ground that the contract, by
its terms, required us to pay to the assignor only.   And if we had
paid the bond in full to James T. Ryan and James R. Duff, and
taken their discharge, Wm. R. Duff could have compelled us to
pay it to him, a second time, notwithstanding the fact that the
whole beneficial interest in the contract was in James T. Ryan and
James R. Duff, the plaintiff herein being but a naked trustee for
them.

These results, following as they do upon the doctrine that we
cannot be permitted to say that the appeal bond belongs, by abso-
lute title, to our debtors in the offset, because we have agreed to
pay the bond to Wm. R. Duff, are opposed to reason and to the
authorities.   (*Barrett* v. *Barrett*, 8 Pick. 342 ; *Naglee* v. *Palmer*,
7 Cal. 543.; *O'Conner* v. *Murphy*, 1 H. Bl. 657 ; *Schoole* v.
*Noble*, Id. 23 ; *Nunez* v. *Modigliani*, Id. 217 ; *Mitchell* v. *Old-
field*, 4 T. R. 123 ; *Hathaway* v. *Russell*, 16 Mass. 473 ; *Battle*
v. *Griffin*, 5 Pick. 167 ; *Middleton* v. *Hill*, 1 M. & S. 240.)

Though somewhat differently worded, the objection of Duff under
42

Duff *v.* Hobbs. .

consideration was raised upon the same condition of facts as in *Naglee* v. *Palmer*. Our undertaking to pay Duff was not more explicit or absolute than was the undertaking by Palmer *et al.* to pay Naglee, in which case it was held that the offset was properly tendered.

It is of no moment that in *Naglee* v. *Palmer et al.* the principal claim was in chancery, for in actions at law equitable defenses may be interposed.

Again : assuming that the bond really belonged to our debtors, then the action upon it should have been, or at least might have been in their names, as the " parties really in interest." (Pr. Act, sec. 4.) Perhaps they could elect, however, to bring it in the name of the plaintiff, their trustee, to whom the bond runs. If the beneficiaries had elected to sue in their own names, could we have defeated the action on the ground that we had agreed to pay Wm. R. Duff alone ? And further, if they had so sued, would not our right to have pleaded their debt to us in offset have been incontestible ? And what difference can it make with our rights that they have elected to sue in the name of their trustee ? If any, then the right of defendants to offset is not a right, for it can be made available only by the sufferance of the party, and here of insolvent parties, interested to defeat it. (Story's Ag. sec. 390.)

II.   It is argued that the judgment roll and papers in the case of *Duff* v. *Fisher et al.* were irrelevant as against plaintiff, because on the case made in the answer we had disclosed no right to tender the offset.

The case is this : A sues upon a bond in which he is named as obligee. B, a stranger, owns the bond absolutely as matter of fact, and he is utterly insolvent. B owes the defendant in the action a larger amount than the sum due upon the bond, and in an answer presenting all these facts the defendant relies upon his larger claim as an offset to the bond.

If the mutual debtors were both responsible, there would be a certainty of mutual payment in the end, and the only question would be one of time and mode ; but where the debtor of the defendant is insolvent, the question is : Shall the defendant pay his debt in money, and thereby be compelled to surrender his last

chance for collecting his own ?    To guard against that injustice, statutes of offset have been passed, and to guard against it more effectually, Courts of Equity, acting upon the maxims that equality is equity, and that he who asks justice must do it, have extended the right of offset to a large class of cases not within the purview of the statutes, or which cannot be enforced by Courts of Law under their narrower rules of procedure.    Under our Practice Act, the defendants, in the case made in their answer, are entitled to an allowance of their offset as a strictly legal right; still, we are content to present it as an equitable right, resting upon the equitable conditions disclosed in the answer.

The leading " equitable circumstance " alleged, is the utter insolvency of all the debtors in the offset.    To this may be superadded the further fact that we (may) have no remedy at law, for the reason that our debt is not due from the plaintiff of record.

If the debtors in the offset had sued the bond in their own names, as, being " the real parties in interest," they might have done, we could have offset them " at law."    To defeat this legal right, and with a view to intercept the last chance of defendants to collect or realize on the debt to them, Ryan and Duff resort to the device of suing in the name of Wm. R. Duff, the obligee named in the bond. The device itself, particularly when worked by insolvent parties, raises an equity that it should be defeated.    (8 Pick. 342 ; *Insurance Co.* v. *Powers*, 3 Paige, 365 ; *Lindsay et al.* v. *Johnson*, 2 Id. 581 ; *Russell* v. *Conway et al.*, 11 Cal. 93 ; *Naglee* v. *Palmer*, *Cook & Co.*, 7 Cal. 543.)

*Geo. F. & W. H. Sharp*, for Respondent.

I.    Conceding appellants had a personal judgment, which we deny, the same was against James T. Ryan, James R. Duff and ten others jointly, and it could not be tendered as an offset in this action.

The right of set-off does not exist at common law.    It is founded exclusively on statute ; and being statutory, Courts can notice none but legal rights.    The statute of this State (Pr. Act, sec. 46) defines set-off to be a counter claim, and fixes what is a counter claim.

A judgment is not allowed to be pleaded as a counter claim at

Duff *v.* Hobbs.

law; and it cannot, therefore, be invoked as a set-off or counter claim.

A judgment is set off by motion. Directness of proceedings requires this mode, especially when, as in the case in hand, both judgments are in the same Court. (*Russell* v. *Conway*, 11 Cal. 101; Montague on Set-off, 1; 1 H. Black. R. 217; *The People, &c.* v. *The Common Pleas*, 13 Wend. 651.) Besides, these judgments are not mutual.

II. Appellants say, if they have not a judgment, they have an unsatisfied balance of a decree. But respondent insists that it could not be tendered as a set-off in this action.

There must be a cross demand, based on contract, for which an action of law might be maintained against respondent. (Pr. Act, sec. 46.) "To authorize a set-off at law, the debts must be between the parties in their own right." (*Naglee* v. *Palmer*, 7 Cal. 543; 22 Barb. 326.)

No such claim exists in this action. Our statute does not allow a set-off against a party in interest, even when that party is before the Court. (*Warner* v. *Boker*, 3 Wend. 400.)

The set-off must be for a specific sum, for which an action might be brought. (*Whitehead and Wife* v. *Code*, 2 How. 95.)

III. If James T. Ryan and James R. Duff were plaintiffs in the place and stead of respondent, appellants could not tender this set-off, whether it be a debt, a judgment, or a balance of a decree. The decree is joint against James T. Ryan, James R. Duff and ten others. Joint debts cannot be set off, either at law or in equity, against separate debts. (*Jackson* v. *Robinson*, 3 Mason, 138; *Green* v. *Palmer*, 6 Conn. 14; *Wolfe* v. *Washburn*, 6 Cow. 265.) The Court, in the last case, says: "To authorize a set-off at law, or in chancery, the debt must be mutual and due to and from the same persons in the same capacity." (*Francis* v. *Rand*, 7 Conn. 221.)

This must be so from the very nature of set-off. A plea of set-off necessarily admits the claim to be due to the plaintiff himself. The theory of appellants admits no such thing; hence its fallacy. In the case cited by appellants from 8 Pick., the plaintiff in fact in that suit made no claim to the money sought to be recovered.

(But see *contra*, *Raymond* v. *Wheeler*, 5 Cow. 231; *Tuttle* v. *Beebe*, 8 Johns. 152; *Alsop* v. *Caines*, 10 Id. 396.)

Besides, the Massachusetts statute of set-off is more comprehensive than ours.   Even when a plaintiff prosecutes as trustee, a defendant cannot set off, either at law or in equity, a demand against the *cestui que trust*.   (*Wheeler* v. *Raymond*, 5 Cow. 231.)

The appellants say they have at least shown an equitable set-off, and they have the right to tender it in this action.   A set-off is never allowed in equity, independent of the statute, only when the law fails to give a remedy.   It must be impossible to obtain justice in a cross action.   (Barb. on Set-off, 190.)   They have made no attempt to enforce the judgment, by execution or otherwise.   The rule that the debts or judgments must be mutual, obtains in equity as well as at law.   But the appellants have not invoked the aid of a Court of Equity.   This they must do by original bill.

But, they say, we have alleged the insolvency of the mortgagors. How does that avail, when they are seeking the right to offset against respondent, whose solvency is not questioned?   It calls upon the party to make an effort, at least.   Appellants dispute respondent's right, for the first time, six years after the agreement was entered into.   (*Williams* v. *Price*, 11 Cal. 212; *Simpson* v. *Hart*, 1 Johns. Ch. 97–8; *Collins* v. *Butler*, 14 Cal. 227.)

Appellants' remedy is exclusively in equity.   They have only to ascertain and fix the balance due, if any, on the decree by a judgment order, issue execution, and levy on the equitable assets, if any, in the hands of respondent, whom they admit to be fully able to respond.   Upon execution returned unsatisfied, they will then be in a condition to file their creditors' bill against their debtors and their fraudulent grantee or trustee.   In such a suit, the rights of all parties can be preserved, but in no others.   This mode has never been departed from.   (*Brinkerhoof* v. *Brown*, 4 Johns. Ch. 671; *Williams* v. *Brown*, Id. 681.)

*Shafter*, in reply.

I.   Respondent says: "Conceding appellants had a personal judgment, the same was against James T. Ryan and James R. Duff, jointly with ten others, and it could not be tendered as an off-

set in this action." All that is said in support of this objection is replete with error.

It is a mistake that the right of set-off " is founded exclusively on statute." Courts of Equity " were in possession of the doctrine of set-off long before the law interfered." (2 St. Eq. sec. 1432.)

The statement that Courts can entertain no set-offs, except such as are based upon " legal rights," is erroneous; for " Courts of Equity will extend the doctrine of set-off, and claims in the nature of set-off, beyond the law, in all cases where peculiar equities intervene between the parties." (2 St. Eq. sec. 1437 a; Naglee v. Palmer, 7 Cal. 546; Russell v. Conway, 11 Id. 101.)

It is also a mistaken view that " a judgment is not allowed to be pleaded as a counter claim, either at law or in equity." A judgment is a contract of record. Debt will lie upon it as such, and it is therefore within the express words of the Practice Act. " The assignee of a judgment may offset it." (Barb. on Set-off, 37.)

These statements are all that counsel advance to sustain the principal objection, viz: that on our theory of the case, the appeal bond belongs to Ryan and Duff, and that the offset tendered is due from them jointly with ten others.

As opposed to the objection, we say that the debt in the foreclosure suit of A. K. Fisher was evidenced by a money bond for $15,000, bearing interest at the rate of four per cent. per month, payable monthly, and that the bond was executed by J. T. Ryan and J. R. Duff jointly with the ten others—all acting as principal parties.

At law, the bond is joint, and the judgment upon it at law is also joint. But even at law the judgment could be enforced by execution levied upon the several estate of any one, or the joint estate of any two of the debtors. Though at law the bond and judgment are joint, still in the eye of a Court of Equity they are each of them joint and several. (Devagnes v. Noble, 1 Merrivale, 530; Wilkinson v. Henderson, 1 Mylne & Keene, 176; 2 Sto. Eq. Ju. sec. 162; Thorpe v. Jackson, 2 Younge & Coll, 533, referred to in 1 Chit. Eq. Dig. 599, sec. 11.)

Our claim to set-off is to receive the same resolution exactly that it would receive if Ryan and Duff had sued the appeal bond in

their own names, averring that they were its real owners. Whether they would sue in their own names, or in that of their trustee, was a matter of choice with them. They have chosen to sue in the name of their trustee; but our right to offset does not wait upon any choice of our adversaries. They have made Wm. R. Duff their representative for the purpose of attack, and have thereby accredited him as their representative for all the purposes of the general warfare. (8 Pick. 342, and the cases there cited; Story Ag. sec. 390; 7 Cal. 543; Barb. on Set-off, 210.)

Suppose, then, the suit upon this appeal bond to have been brought by J. T. Ryan and J. R. Duff, could our offset have been successfully resisted, on the ground that it was due from them and " ten others jointly "—the whole twelve being hopelessly insolvent.

1. An execution on our judgment might be levied not merely upon the joint property of the twelve, but upon the several property of each of them; and upon the joint property of any two of them as well.

2. The original mortgage debt, and the judgment or the " balance " upon it, are several liabilities in equitable effect though joint in form.

3. The authorities show that our offset ought not to be rejected, on the ground that there is a partial want of technical " mutuality " in face of the fact that all our judgment debtors are insolvent. (*Jackson* v. *Robinson*, 3 Mason, 145; *Barber* v. *Spencer*, 11 Paige, 517; *Pond* v. *Smith*, 4 Conn. 302; *Robbins* v. *Holley*, 1 Monroe, 194; *Chamberlain* v. *Stewart*, 6 Dana, 33; *Mitchell* v. *Oldfield*, 4 T. R. 123; *Naglee* v. *Palmer*, 7 Cal. 543.)

VI. We admit that the " cross demand must be based on contract, for which an action might be maintained," but deny that it is essential in equity, if the proper equitable circumstances are established, that the cross demand should be one for which an " action at law " would lie against the plaintiff in the action. (See cases previously cited, and particularly 8 Pick. 342, and *Naglee* v. *Palmer*, 7 Cal. 543.) The case cited from 3 Wend. 400, was at law—there was no pretense of " equitable circumstances."

VII. It is further insisted " that if James T. Ryan and James R. Duff were plaintiffs in the place and stead of respondent, appel-

lants could not tender this set-off, whether it be a debt, judgment, or balance of a decree."

All the authorities cited by counsel from Conn. and N. Y. are in harmony with the views heretofore presented by us. Those cases establish the position, that at law the claims must be mutual, and that they must lie between the parties to the record. They further establish that the same requirement obtains in equity as a general rule, and as to that we have not expressed a doubt. All the Connecticut cases cited were decided by the same Court that decided the case of *Pond* v. *Smith*, (4 Conn. 302) in which it was held, that cases of insolvency constitute an exception to the above general rule.

The case of *Alsop* v. *Cimes*, (10 John. 396) relied on by counsel, was at law; but Chancellor Kent expressly recognizes the doctrine that in equity the want of mutuality would under proper circumstances be of no moment. The general answer to respondent's authorities is, that they do not meet the question.

VIII. It is urged that equity never interferes unless the party is remediless at law, and it is added, that the defendants " have made no attempt to enforce their judgment by execution or otherwise."

We add that no such attempt had been made in 8 Pick. 342; nor in 4 Conn. 302; nor in 1 Monroe, 194; nor in 6 Dana, 33; nor in 4 T. R. 123; nor in 7 Cal. 543. The party must be remediless in fact, but that may very well be, even though he have not tried every description of legal experiment in order to demonstrate it. We have averred the fact of insolvency, and for all the purposes of the present hearing the allegation must be taken as true. Assuming the insolvency as a fact, we have the exact pivot upon which alone the cases above cited rest the doctrine which we invoke.

To issue execution against the debtors in the Fisher judgment, would be to do a " a vain thing," and if done, and returned " *nulla bona*," the return would be evidence merely of the fact of insolvency. As a matter of pleading the fact should be stated, and not the evidence of it. (*Walker* v. *Sedgwick*, 8 Cal. 398; *Heyneman* v. *Dannenberg*, 6 Id. 376, are cases bearing directly upon the question.)

Duff *v.* Hobbs.

IX.   It is said that " the only remedy of the defendants is in equity."   To this we assent, and add, that it is to " equity " we have made our appeal.   But from the proposition that we can under no circumstances bring our cross claim to the notice of a Court of Equity except by " original bill," we dissent.   The plea of set-off is itself in the nature of a cross action.   The cases that we have cited show that an equitable offset may be presented by plea or answer as well as by original bill.

This is not an attempt on the part of judgment creditors " to reach equitable assets in the hands of a fraudulent trustee."   In proceedings looking to that result, the initiative is always taken by the creditor.   Here the initiative was taken by the judgment debtors acting covertly through a naked trustee, thereby subjecting the judgment creditors to the necessity, and at the same time affording them an opportunity of opposing their claim to the claim so sought to be enforced.

Our answer is not based upon the idea that William R. Duff has assets presently in his hands belonging to our judgment debtors, which we could not reach by execution, and which we seek to have converted into money and applied by the trustee or the Sheriff to the payment of our judgment.   The answer does not charge that the plaintiff has any " assets " in his possession belonging to our debtors, but that our debtors are themselves the owners of a certain " thing in action," in which thing we ourselves figure as debtors.   Whatever of available " assets " there may be involved in this predicament, belonging to Ryan and Duff, are in our hands and not in those of Wm. R. Duff.

NORTON, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This is an action on an appeal bond in which the defendants claim the right to offset the balance of a decree in a foreclosure suit, which they have purchased and now hold, against James R. Duff and James T. Ryan, and eleven other defendants in that foreclosure suit, upon the ground that James R. Duff and James T. Ryan are the parties beneficially interested in the claim in suit in this action, and that they and all the other eleven defendants in the decree sought to be offset are insolvent.

The statute of this State applicable to this subject provides that a counter claim, which may be set up in answer, shall be one existing in favor of the defendant against a plaintiff, between whom a several judgment might be had in the action, and that if the counter claim exceeds the amount of the plaintiff's claim, the jury shall find the amount of the recovery, and judgment shall be given for the defendant for the excess. (Civil Prac. Act, secs. 46, 47, 176, 199.) Under these provisions of the statute, the set-off proposed in this case cannot be allowed; as well by reason of the provision of section forty-seven, which requires it to be between the parties to the record, as of the provisions of sections one hundred and seventy-six and one hundred and ninety-nine, which would require a judgment for the excess to be given against the plaintiff, although as against him it is not claimed that the defendants have any demand. The cases of *Wheeler* v. *Raymond*, (5 Cowen, 231) *Warner* v. *Barker* (3 Wend. 400) and *Spencer* v. *Babcock* (22 Barb. 326) are to this effect. By section five of the Civil Practice Act it is provided, that in the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of or before notice of the assignment. In such a case if a set-off should be allowed, it would be in conflict with the provisions of section forty-seven, and hence it has been decided that in such a case the set-off cannot be pleaded as a counter claim, but must be set up as an equitable defense, on the ground that the assignee takes the demand subject to an existing equity. (*Ferreira* v. *Depew*, 4 Abbott's Pr. R. 131.) Whether this be the proper answer to what otherwise might appear to be a conflict between these sections, or whether section forty-seven must be considered as subject to an exception in the case mentioned in section five, is not important in this case, because this case is not one falling within the provisions of section five. The plaintiff is not an assignee, and at the time his interest in the bond in suit accrued —that is, at the time the bond was executed, as well as at the time when the defendants' liability on it became fixed, the defendants had no defense, or counter claim against it, whether considered as the property of the plaintiff or of James R. Duff and James T. Ryan, the defendants at that time not having become the owners of the demand now sought to be offset.

Duff *v.* Hobbs.

It is insisted, however, that the insolvency of the beneficial owners of the demand in suit, and against whom the defendants have their claim, is an equitable ground, independent of and beyond the right given by the statute upon which this offset may be allowed.    Under the old system by which legal and equitable rights were administered by different tribunals, Courts of Equity did in some cases allow or enforce an offset which was not within the provisions of the statute, and under our present system an equitable defense may be interposed by answer to a legal action.    But the matter set up in the answer in this case is not a defense equitable or legal, in any other sense than as being purely an offset, and as such it meets an insuperable obstacle in the provisions of the statute which require offsets to be between parties to the record.    Those statutory provisions which have introduced the new system of proceedings under which equitable defenses are allowed to be made in legal actions, are portions of the same law which defines the conditions under which alone an offset can be made.    They are the different sections of the Civil Practice Act, and there is no authority for holding that the sections regulating counter claims were not intended to apply, as by their terms they do apply to all actions that can be prosecuted under that Act.    No exceptions are contained in the statute in favor of offsets affected by equitable circumstances.    It may be that in providing but one mode of proceeding, and in taking its provisions partly from each of the old systems, some of the provisions taken from statutes regulating proceedings at law are, from inadvertence, left too restricted to embrace all the cases to which they might properly have extended, and on the other hand it may be that it was deemed expedient to leave the proper relief in some cases of a complicated character to be obtained by a distinct action.    But whatever the reason, the statute as the Legislature have enacted it must control the proceedings of the Court.    The two cases cited by the defendants, decided by this Court, (*Naglee* v. *Palmer*, 7 Cal. 543, and *Russell* v. *Conway*, 11 Cal. 93) do not stand in the way of this view of the law.    In deciding the case of *Naglee* v. *Palmer*, the Court say : " It may be granted, that if this were an action at law, and not a proceeding in chancery, the defendant would not be entitled to his set-off.    But this is a proceeding in

equity; the defendants have been brought in by the plaintiff, and it is competent for the Court to administer that substantial relief to which the parties show themselves entitled." The case before us is what would be called an action at law. If it should be said that there is no proper foundation under our present system for the distinction here taken between an action at law and a proceeding in equity, then it may be said that the case was wrongly decided and is not authority on this point. In the case of *Russell* v. *Conway*, the offset was not brought forward by way of answer to a complaint, but by a distinct action, and thus was not obnoxious to the objection arising from the restrictions of the statute.

The view we have taken of this point renders it unnecessary to decide whether the insolvency stated in this case creates such an equity as is claimed, or whether the other facts stated show that the plaintiff is not the real party in interest.

Judgment affirmed.