BATLLE ET AL., PLAINTIFF-APPELLANTS, *v.* J. B. LICHTENSTEIN & Co., DEFENDANT-APPELLANTS.

APPEAL from the District Court of Ponce in an Action for Performance of Contract.

No. 2943.—Decided May 8, 1924.

LEASE—CONTRACT—BREACH OF CONTRACT.—The evidence showing that the plaintiff lessors had failed to comply with the contract, it was held that they could not compel the defendants to perform it.

ID.—ID.—PLEADING—NOTICE.—Of all the pleadings following the complaint copies should be delivered to the adverse party, but if this is not done and the party entitled to the copy complains of the omission during the trial, but after the party filing the pleading has rested and when all the circumstances

tend to show that he had full knowledge of the pleading, the court commits no prejudicial error in overruling the objection.

Id.—Id.—Improvements—Counterclaim.—A plaintiff who has been counter-claimed for the value of improvements made on the leased property by the defendants, according to agreement, may pray that the value of such improvements be paid out of the amount of rent due and unpaid by the defendants as lessees.

The facts are stated in the opinion.

*Messrs. J. Tous Soto* and *Pérez Marchand* for the plaintiff-appellants.

*Messrs. Martínez Nadal, Tormes* and *Colón* for the defendant-appellants.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The plaintiffs alleged in their complaint that they were the owners of a certain urban property and had leased it to the defendants under the conditions specified in the complaint, and that the defendants refused to sign the contract as agreed upon, notwithstanding the fact that they were in possession of the leased property and the plaintiffs were willing to perform all of the obligations contracted. They prayed that the defendants be ordered to sign and live up to the contract.

In their answer the defendants admitted the making of the contract, but denied that they had agreed to all of the stipulations transcribed in the complaint. The defendants also denied that they were in possession of the whole property. They admitted that they were occupying a part of it that had been transferred to them by the American Tobacco Co., its former lessee.

As new matter of defense the defendants alleged:

"That after correcting the error in the sixth clause of the draft submitted by the plaintiffs to the defendants in fixing the amount of $1,200 when the agreement had been $1,500 (referring to the improvements that the defendants were to make and for which they were to be reimbursed by the plaintiffs) and the error in fixing the amount of the two instalments in which the said sum was to be paid, the defendants were willing to accept and perform the other condi-

tions of the contract and to sign the corresponding instrument, so much so that the defendants made the improvements agreed upon, expending therein the sum of $1,520; that the defendants did not execute the instrument containing the contract nor continue to perform its obligations, because the plaintiffs first failed to comply with their obligation to pay the defendants on March 10, 1921, the first instalment of $900 which they had agreed to pay under the sixth clause of the contract when the lease took effect, and the plaintiffs also failed to perform the fundamental obligation under the contract of delivering the leased property to the defendants, because the part of the building that they had agreed to deliver was occupied by the Porto Rico Importing Co., engaged in the cutting of diamonds, and the company refused to vacate the premises."

The defendants also filed a counter-complaint, claiming the value of the improvements made and of a certain building which they alleged they had had to erect because the leased warehouse was not delivered to them in time.

Then follow in the transcript a demurrer and an answer to the counter-complaint filed by the defendants. At the conclusion of that pleading the following appears:

"We further allege as new matter in opposition: Compensation. —That the counter-complainant has been using and enjoying a portion of the leased building described in the complaint, equivalent to 93.45 thereof, since March 10, 1920, under the lease contract set up in the complaint, without having paid any rent, the proportional rent of the part so occupied being $186.90 monthly."

At the trial a large amount of documentary and oral evidence was examined and the district court finally disposed of the case on the grounds contained in a statement of the case and opinion concluding as follows:

"After careful consideration of the evidence as a whole the court arrives at the following conclusions: (*a*) That the lease contract entered into between the parties was not performed by the plaintiffs, because they were unable to deliver the building on the agreed date, March 10, 1921. (*b*) Because the plaintiffs were under the obligation to pay to the defendants the sum of $600 for the improvements made to the building by the defendants when the lease took effect, or on March 10, 1921, and they were not duly diligent in

paying the said sum to the defendants.    (*c*) That the plaintiffs are under the obligation of paying to the defendants the sum of $1,200 for the improvements made by them to the building.    (*d*) That the plaintiffs are entitled to a compensation of $75 monthly for the part of the building occupied by the defendants from the 10th of March, 1921.''

Judgment having been entered in accordance with the foregoing conclusions, both parties appealed to this court and the appeals have been considered jointly.

Six errors are assigned by the plaintiffs.    They may be condensed into two, as follows: Errors committed in weighing the evidence and finding that it showed non-performance of the contract by the plaintiffs, and error in fixing the amount of compensation.

We have considered carefully the evidence examined and in our opinion it supports the conclusions of the trial court.

The property involved is a large masonry warehouse.    It was occupied in part by a diamond-cutting factory and in part by a tobacco company.    About the year 1920 the plaintiffs and the defendants agreed upon a lease contract to go into effect on March 10, 1921, Julio Nigaglioni being the mediator.    At the trial he testified as a witness for the plaintiffs as follows:

''What they agreed on in my presence was to lease the said warehouse for five years for the sum of $200 a month and Vilaró was to advance $600 for some repairs which one party estimated at $1,200 and the other at $1,500.    Vilaró was to pay for these repairs, advancing half when the work was begun and paying the other half when it was finished.    That is all that I know about this case.''

We have said that the agreement was first made in 1920, and inasmuch as the defendants needed the property urgently, they obtained from the tobacco company a lease of the part occupied by it.    Forthwith, with the consent of the plaintiffs, the defendants began to make the improvements to the building, expending more than $1,500.

The 10th of March, 1921, arrived.    The plaintiffs suc-

ceeded in getting the diamond company to vacate the premises before that date, but the building was left in such a bad condition that the plaintiffs did not receive it and were compelled to bring suit, wherein they recovered judgment in their favor.

For this reason the fact is that the plaintiffs did not deliver the building in the manner stipulated on the day agreed upon, and it does not appear that they paid or offered to pay the defendants any sum of money for the improvements promised to be made and actually made by the defendants.

Hence, the failure of the plaintiffs to live up to the contract is evident. It is well to add that the written contract was not signed, for although the parties agreed upon the fundamental conditions, there were some details as to which they did not agree. Two notaries were employed in drafting the document.

On the question of "compensation" the plaintiff-appellants contend that the court erred, alleging that as it was shown that the defendants occupied 94.45 per cent of the building and the rent was $200 monthly, the sum of $75 a month ordered to be paid is inadequate. The evidence was contradictory. That of the defendants was to the effect that they occupied only one-third of it.

But in our opinion that is not the ground on which the court based its judgment. It is admitted that prior to the date on which the contract was to go into effect the defendants occupied a part of the premises under an agreement with its lessee, with the consent of the plaintiffs, paying $75 monthly. And the court found that that was the sum that they should continue to pay. This question will be discussed again in considering the appeal taken by the defendants. The appeal of the plaintiffs, considering all that has been said, must be dismissed.

In their brief the defendant-appellants assign four errors that may be reduced to two, as follows: First, in not striking out evidence, in admitting evidence and in sustaining the

compensation; and, second, in weighing the evidence in connection with the $5,200 claimed as damages.

On the matter of damages we will say that no effort is necessary in order to conclude that there was no such error. The defendants alleged and attempted to prove at the trial that because of the non-performance of the contract by the plaintiffs they were compelled to build a shed for housing tobacco in Coamo at an outlay of the said sum, which was entirely lost because the shed reverted to the owner of the property on which it was built. This claim is so devoid of reason and so exaggerated that in our opinion it not only is without merit, but also reflects upon the position of the defendants in the suit and raises doubts in the mind of the court in weighing their other allegations.

As to the matter of ''compensation'' the record shows that when the plaintiffs rested the defendants said:

''We move to strike out the answer to the counter-complaint praying for compensation, because the adverse party, at no time during the pendency of the action, has furnished this party with a copy, and this party has had no notice of the filing of such an answer.

''Plaintiffs: We are of the opinion that it should not be stricken out, for, leaving aside the question of notice or no notice of that pleading, the fact is that the prayer of the complaint answered by the defendants in this case is in part identical with the claim for compensation under consideration, praying the court to order the party to sign the contract and perform all of its conditions, including the payment of the rent; and we suppose that it is not the purpose of the party to refuse compensation for the occupation for a little over one year of a building rented at $200 a month, relying, as said by my colleague a moment ago, on a subterfuge or sophistry.

''Judge: The court will take the motion into consideration and rule on it in due time.''

We have seen that the defendants filed a counter-complaint in this case. And section 115 of the Code of Civil Procedure concludes as follows: ''The cross-complaint must

be served upon the parties affected thereby, and such parties may demur or answer thereto as to the original complaint.''

The plaintiffs made use of the rights given them by the statute and filed their ''demurrer and answer to the counter-complaint'' dated January 21, 1922. The section cited says nothing about notice, as in the case of the defendants' cross-complaint, and it was not until July of 1922, at the trial and after the plaintiffs had rested, that the defendants raised the question.

Such being the case, the court was in a position to decide the question raised under the attending circumstances. Hence, we are of the opinion that if any error was committed in connection with the provision of section 135 of the Code of Civil Procedure, which was not cited by the defendant-appellants in their brief, such error was not prejudicial. The defendants were so well informed of the facts that they took the attitude which to a certain extent was fixed later in the judgment. There are in the evidence indications tending to show that the defendants decided to remain in possession of that part of the warehouse occupied by them without paying the rent in order to reimburse themselves for what they had expended in improvements.

The question concerning notice being thus disposed of, let us consider that of the compensation.

Section 113 of the Code of Civil Procedure reads:

''Sec. 113.—When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counter-claim could have been set up, the two demands shall be deemed compensated, so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other.''

We are of the opinion that this section is applicable to the instant case. The defendants, in their counter-complaint, claimed the cost of the improvements that they had made to the leased property and the plaintiffs then claimed, under the heading of compensation, the rent of the part of the

building occupied by the defendants where the improvements had been made and not paid for by the defendants. Perhaps the form is not that of a model pleading, but the case as a whole was before the court and it acted correctly in deciding it so as to terminate the litigation and in not striking out something that necessarily would have brought about another suit.

Section 113, *supra,* is the same as section 440 of the Code of Civil Procedure of California. The following decisions illustrate its meaning and scope:

"Demand to be used to compensate another under this section must be such as would constitute subject-matter of statutory counter-claim. Counter-claims differ from equitable right of set-off which requires some circumstance based upon equitable ground such as fraud, insolvency or the like, to warrant interference of court. Both statutory and equitable right, however, are founded on idea that mutual existing indebtedness arising out of contracts between parties to record creates compensation or payment of both demands so far as they equal each other; but under code the two demands must be mutual and coexist as separate causes of action at commencement of action upon principal demand." *Lyon* v. *Petty,* 65 Cal. 322, 324, 4 Pac. 103.

"Where certain sum is due defendant for rent and like or greater sum due plaintiff for interest, they may be offset." *Martin* v. *Ede,* 103 Cal. 157, 162, 37 Pac. 199.

"Doctrine of set-off is said to have been borrowed from doctrine of compensation in civil law, and resembles it in many respects. To authorize sets-off at law debts must be between parties in their own rights, of same kind or quality, and clearly ascertained or liquidated." *Naglee* v. *Palmer,* 7 Cal. 543, 546.

The "compensation" claimed and allowed in this case being examined, we find that it contains the requirements prescribed by sections 1163 and 1164 of the Civil Code. *Porto Rico Fertilizer Co.* v. *Gandía,* 29 P.R.R. 360, 363.

By virtue of the foregoing the appeal taken by the defendants must be dismissed also, the judgment being affirmed in all of its parts.

*Affirmed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto con-
curred.