## HOBBS *et al. v.* DUFF *et al.*

A DECREE, rendered in an action on a bond, and to foreclose a mortgage given to secure the bond, which, after reciting the amount found due on the bond, directed that the mortgaged premises be sold, and out of the proceeds, the costs and the amount found due on the bond and accruing interest be paid, and that if there was a surplus, the Sheriff pay such surplus into Court, but that if the proceeds were insufficient to pay the debt, interest and costs, the Sheriff should report the amount of such deficiency or balance, and that, therefor, the plaintiff have execution against the defendants, merges the original debt in such judgment, at least so far as to make it a certain and liquidated demand, existing at the date when the amount of balance was ascertained, by the report of the Sheriff, sufficient as a foundation of a right of action or set-off.

It is not necessary that the demand sought to be used as a set-off, should be in the form of a personal judgment.

Where A appeals from a judgment against him, and B becomes his surety on the appeal bond; and A, to secure B for his liability on the appeal bond, assigns to B a liquidated demand held by A against third parties, the liability of B on the appeal bond is a sufficient consideration to support the assigment made to him by A.

The purchaser of a judgment, although he buys in good faith and for a valuable consideration, takes the same subject to any right of set-off existing between the parties at the time of his purchase.

An assignee of a judgment is deemed to have notice of all matters disclosed by the record and proceedings in the action in which the judgment was rendered, and where that judgment or the proceedings therein disclose an equitable right of set-off existing in favor of the defendants against the plaintiff, the assignee cannot claim to be a *bona fide* purchaser.

Where the parties to two judgments are not the same, a Court of Common Law jurisdiction cannot set off one against the other; but a Court of Equity will look beyond the nominal to the real parties in interest, and adjudicate the rights of the parties accordingly.

A Court of Equity will not permit a *cestui que trust* who is insolvent, to enforce and collect through his trustee, a judgment against a party who holds a just and valid demand against the *cestui que trust*, which he has no means of enforcing or collecting if a set-off is denied.

Where, in an action at law, the defendants in their answer set up and claim a set-off to plaintiff's demand; and on the trial of the action, the record shows that the Court excluded all evidence of the demand sought to be set off, and gave judgment for plaintiff, the judgment in the action at law cannot be pleaded or claimed as an estoppel, in an action afterwards brought by the defendants in a Court of Equity to enforce the set-off.

The jurisdiction of a Court of Equity in relation to set-offs, is more extensive than that of Common Law Courts; and where the defendant in one of the judgments is insolvent, and the plaintiff in the other is not the real party in interest, but a trustee for the insolvent defendants in the other judgment, a Court of Equity will decree a set-off.

In equity, the right of set-off depends, not on the Statutes of Set-Off, but upon the right and the equitable jurisdiction of a Court of Chancery over its suitors.

A party does not lose his right to bring an action for a demand, which he might have pleaded as a set-off in a former action, but neglected to do.

An action brought in a Court of Equity to enforce a set-off of one judgment against another, is "an action upon a judgment or decree" within the meaning of Sec. 17 of the Statute of Limitations, and may be brought at any time within five years of the date of the judgment or decree.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

April 14th, 1857, Alfred K. Fisher brought an action in the District Court for Humboldt County against James T. Ryan, James R. Duff, and ten others named. The action was brought to foreclose a mortgage made by the defendants in said suit to A. S. Tobias, to secure their bond to him—which said bond and mortgage had come to said Fisher by assignment. The bond and mortgage were executed November 3d, 1854.

Decree for plaintiff in the suit, September 15th, 1857.

Order of sale issued to Sheriff September 15th, 1857, who reported, October 10th, 1857, a sale of the mortgaged premises at public auction, application of the proceeds, and a deficiency or balance of $17,248.89.

February 23d, 1856, Fisher entered into a written contract with William R. Duff, by which, in consideration of a certain sum of money to be paid to him, he agreed to convey to William R. Duff

all the mortgaged property, if, upon foreclosure and sale, he became the purchaser and acquired the title.

At the Sheriff's sale Fisher became the purchaser, but refused to carry out his contract with W. R. Duff, and on the ninth day of May, 1858, assigned the property and balance due on the decree to Richard F. Knox and Franklin Knox.

July 20th, 1858, W. R. Duff brought an action in the Eighth District Court against Fisher, and the Knoxes, and others, to enforce a specific performance of the contract made with him by Fisher, alleging that the Knoxes bought the property with full knowledge of the contract and with intent to defraud, etc.

June 17th, 1859, W. R. Duff recovered judgment against Fisher and the Knoxes, awarding a specific performance and a money judgment for $13,566.99.

From this judgment the Knoxes appealed to the Supreme Court; and the plaintiffs in this suit, Caleb S. Hobbs, Stephen D. Gilmore, G. W. Arms, L. Stephens, E. S. Goddard, and James Clark, executed an appeal bond on behalf of the Knoxes, staying the judgment. The appeal bond ran to William R. Duff as obligee, and bore date July 25th, 1859. The judgment from which the Knoxes appealed was affirmed in the Supreme Court in 1860. The case is found reported in 15 Cal. 375.

William R. Duff then brought an action against the present plaintiffs on the appeal bond, and recovered judgment against them August 23d, 1861, for $16,900.

On the tenth day of May, 1860, and soon after the judgment in the case of *W. R. Duff* v. *Fisher et al.*, for specific performance, had been affirmed in the Supreme Court, the Knoxes assigned to Goddard, one of the present plaintiffs, the balance due on the decree which Fisher had assigned to them; and said assignment was made by the Knoxes to secure Goddard and his coplaintiffs for their liability on the appeal bond; and Goddard then assigned to his coplaintiffs an undivided half of this balance.

The present plaintiffs appealed from the judgment against them on the appeal bond, and the judgment was affirmed in the Supreme Court March 7th, 1862. The case is reported in 19 Cal. 646, and an examination of it will explain the leading facts in this case.

At the commencement of the present action, Hobbs, Gilmore, Armes, Stephens, Goddard, and Clark, the present plaintiffs, who were the Knoxes' sureties on the appeal bond, were the owners, by assignment, of the balance due on the decree in favor of Fisher against James T. Ryan, James R. Duff, and ten others. Isaac Josephi was the owner, by assignment, of the judgment recovered on the appeal bond by William R. Duff against the present plaintiffs; Duff had assigned this judgment to one Sharp, who had assigned it to Josephi.

The present action was brought to enjoin Josephi and his codefendants, Ryan, the two Duffs, and others, from issuing an execution on and attempting to enforce the collection of the judgment on the appeal bond against the plaintiffs, and to obtain a decree setting off the amount of the Duff judgment against plaintiffs, against the same amount of the unsatisfied balance of the decree held by plaintiffs against James T. Ryan, James R. Duff, and ten others.

The complaint, among other things, averred:

That on the twenty-third of February, 1856, Alfred K. Fisher entered into a contract with said James T. Ryan and James R. Duff (defendants herein), but by the especial request of the said James T. and James R. the name of William R. Duff (another of the defendants herein) was inserted in the contract as written, as the party contracting with said Fisher, instead of the real parties, James T. Ryan and James R. Duff.

That the said contract was so made running to William R. Duff with the intent and purpose, on the part of said James T. and James R., to delay, postpone, defeat, and defraud their creditors, to which said intent and purpose the said William R. Duff was party and privy.

That the action for specific performance and accounting, and the money judgment for the $13,566.99, and the appeal bond given by the plaintiff, and the action on the appeal bond, and the judgment thereon—were brought and procured by James T. Ryan and James R. Duff, to whom the said contract, and the said appeal bond, and the said several actions belonged in full ownership, and to whom the said several judgments now and ever have belonged by a like ownership and title. And that William R. Duff never

had, and has not now, any rights or interests in said contract, appeal bond, actions, or judgments, except as a mere naked trustee of the aforesaid real owners thereof.

That Ryan and James R. Duff so the real owners of said judgment against these plaintiffs on the said appeal bond, and so debtors, as aforesaid, in the foreclosure decree and balance, so belonging to these plaintiffs by assignment, as aforesaid, are, together with the ten other debtors in said balance, utterly insolvent; and unless the said balance so belonging to the plaintiffs herein, and the said judgment against the plaintiffs, so belonging to said Ryan and James R. Duff, as aforesaid, can be opposed to and set off against each other, the plaintiffs will be wholly remediless.

Then follows the appropriate prayer.

The motion for a preliminary injunction was heard in the Court below upon the complaint; answer of defendant Josephi, and replication thereto; affidavits in support of the complaint, and other affidavits, filed on behalf of defendant Josephi. The Court below granted the preliminary injunction, and from this order the defendant Josephi appealed.

The other facts appear in the opinion.

*Patterson, Wallace & Stow,* for Appellant.

The foundation of the case set up by the respondents is, that they have become and are the assignees of a certain judgment, rendered in favor of one Fisher against one James T. Ryan, and James R. Duff, and others. We submit, that no such judgment is shown to have been rendered. The supposed judgment is to the following effect:

The Court ascertains, in the suit of Fisher against Ryan and James R. Duff, that there is a certain sum due on the bond and mortgage, directs that the mortgaged property be sold to pay this amount. Directs that, if the sale of the mortgaged property shall not produce enough to pay the sum ascertained to be due, the Sheriff shall report the amount of the deficiency, and that execution issue against Ryan, James R. Duff, etc., for the deficiency.

As held by this Court, in the case of *Rollins* v. *Forbes* (10 Cal.

Hobbs *v.* Duff.

300), it was competent for Fisher, in that suit, to have pursued either one of two distinct courses in enforcing his rights, viz. : He might take a personal judgment for the amount due, with a direction for the sale of the mortgaged property, and the application of the proceeds of the sale to the credit of the judgment ; and upon the judgment so rendered, he might then take out execution for the unpaid balance, without further application to the Court. Or, he might, as he did do in this case, obtain a decree adjudging the amount due upon the personal obligation and directing a sale of the premises, and the application of the proceeds to the payment of the judgment ; in which latter case (as clearly appears from *Rollins* v. *Forbes and Wife, supra*) further action of the Court will be necessary ; *i. e.*, the proposition being, that personal judgment must be rendered. Whether before or after the sale of the mortgaged premises, makes no practical difference ; but it must be rendered at some time.

It is true that this decree awards execution for the unsatisfied balance which may remain ; but an award of execution does not constitute a judgment. (*Phillipson* v. *Mangles*, 11 East, 516.)

In *Chapin* v. *Broder* (16 Cal. 422) the decree contained a statement of the amount due, but it was notwithstanding held, that there was no personal judgment for the amount—that the matter was contingent, even though there, as here, was an award of execution.

A final decree for money must specify the sum—not leave it to be ascertained by a Sheriff or Commissioner's report. (*Clark* v. *Bell*, 4 Dana, 16.)

Assuming, however, that there was a judgment rendered in favor of Fisher, and against James T. Ryan, James R. Duff, and the "Humboldt Lumber Manufacturing Company," which might be the subject of assignment, we submit, that the record in this cause discloses such a state of facts, as makes it unfit for a Court of Equity to help the complainants to a set-off.

This unsatisfied balance of the Fisher decree first passed from Fisher to the Knoxes by formal assignment.

The complainants introduce the affidavit of one of the Knoxes, and it affirmatively appears by that affidavit, that the Knoxes have

39

merely made a present of this Fisher balance to the complainants, by way of enabling them to set it up against the judgment on the appeal undertaking, if they can.   In the pleadings, the plaintiffs say they paid " valuable consideration," " divers good and sufficient considerations ;" but nowhere allege or prove any amount whatever paid by them, or either of them, for this Fisher balance.   The record shows that the Knoxes committed a fraud in becoming the assignees of this balance; that Goddard paid the Knoxes nothing for it, and then divided it with his cocomplainants upon the same terms.   It is now held by the complainants, not as *bona fide* assignees, who have paid value for it, and who have rights to be protected in reference to it, but in trust, for the use and benefit of the Knoxes. If the set-off can be sustained, the Knoxes will be released from paying their sureties, the complainants, anything.   If the set-off is not sustained, the Knoxes will have to pay the W. R. Duff judgment.

In *Perkins* v. *Parker* (1 Mass. 117) it is held, that to enable a party to avail himself of the aid of a Court of Equity, as an assignee, he must hold the formal evidence of the assignment to him, " and this must appear to have been made, not merely upon a consideration expressing a formal value, but upon a good and adequate consideration."   "And it is essential (say the Court) that the nature and amount of this consideration should be averred and proved by the party claiming the aid of this Court to enforce it as an equitable right; especially, when the interests of a third person, who is no party to the consideration of the assignment, is to be affected by it."

And upon page 126, Strong J. says: " I have no doubt that the law will protect the equitable interests of an assignee of a chose in action.   But to create the equitable interest, the assignment ought to be made for a good and adequate consideration, such as money paid, or a precedent debt discharged, etc., and the instrument assigned delivered over to the assignee ; and these several facts ought to be shown in the pleadings.   But what is the case before the Court ?   The replication says that, 'for value received the note was assigned.'   (The phrases used in the complaint in the case at bar are, that Fisher sold to the Knoxes, ' for value received,' and

the Knoxes ' sold and assigned ' to Goddard, and Goddard to the other complainants, ' on divers meritorious and valuable considerations.') It is true that ' value received ' is *prima facie* evidence of a valuable consideration. What is a valuable consideration? A peppercorn; and for aught that appears by the pleadings in this case, there was no greater consideration than that for the supposed assignment," etc.

And again, in *Gilman* v. *Van Slyck* (7 Cow. 469) upon application to the Court to set off one judgment against another, the Court say: " It is not competent for a party thus to buy a judgment conditionally for the purpose of setting it off. He is bound to become the absolute proprietor for that purpose. He must purchase and incur the risk of set-off himself; not come, as here, in the light of a mere agent."

In the case at bar there is not even a conditional purchase by complainants.

In *Satterlee* v. *Ten Eyck* (7 Cow. 480) it appeared that one Aiken obtained a judgment against Southwick, and indemnified Ten Eyck, the Sheriff, to obtain a levy on property as Southwick's property, which was claimed by the Satterlees. The latter sued the Sheriff, Ten Eyck, for the trespass, and recovered judgment against him and Aiken, then purchased from one Turner a judgment, which Turner had obtained against the Satterlees, and got the assignment made out in the name of Ten Eyck. And a motion being made in the name of Ten Eyck to set off one judgment against the other, the Court refused it, saying that the party must be really the assignee—not the mere agent or trustee of another. He must be the absolute owner, holding the beneficial control, or there could be no set-off.

Aiken was there, through the agency of Ten Eyck, attempting to do the same thing that the Knoxes are attempting here through the agency of the complainants, viz.: to save himself from being ultimately compelled to pay the judgment.

The case was afterwards brought before the Court of Chancery of the State of New York (1 Paige's Ch. 298) and the set-off was again denied there. In the case at bar, it is nowhere pretended in the record, that the Knoxes are not amply able to repay

the complainants, their sureties on the appeal bond, the whole amount that they may be compelled to pay as sureties.

These complainants are estopped in this suit to aver that James T. Ryan and James R. Duff are the real parties in interest in the money due from them on the judgment on the appeal bond, because ; In the suit that Wm. R. Duff instituted against the now complainant Goddard, it was in like manner adjudged that Ryan and James R. Duff had no interest on the side of W. R. Duff in the matters out of which these matters have grown ; and it is not pretended that they have since acquired any such interest.

Fisher, the remote assignor of these complainants, would be estopped by the record in the suit of *Duff* v. *Fisher and Knoxes*.

Knoxes are estopped by the record of the same suit. Complainant Goddard litigated this precise question with William R. Duff.

The rule is that verdicts and judgments are conclusive against parties and privies in estate. The complainants, as assignees, are privies of their assignors, immediate and remote.

"If a party, after the verdict and judgment against him, assign his interest, the assignee is bound by the verdict." (2 Phillips on Ev. 15, note 260 ; *Payner* v. *Coles*, 1 Mumf. 373 ; *Church* v. *Leavenworth*, 4 Day, 274.)

And in the action on the appeal bond by Wm. R. Duff against these complainants, it was expressly averred by these complainants, defendants in that suit, that Ryan and J. R. Duff were the real parties in interest in the money now in suit, and the verdict and judgment were against them.

And there is no difference in the rule of set-off at law and in equity. (*Elder* v. *Laswell*, 2 Blackf. 349 ; *Van Buren* v. *Van Gaesback*, 4 Cow. 498.)

Mutual debts without mutual credits are no ground in equity for set-off, even in case of insolvency. *French* v. *Garver*, (7 Porter, Ala. 555.)

This complaint, though in the name of the present plaintiff, is in reality an attempt on the part of the Knoxes to avail themselves of the fruits of the fraudulent assignment made to them by Fisher— for it will be observed, that it is nowhere pretended in the record, that the Knoxes are insolvent, nor that if these then complainants

are compelled, as sureties of the Knoxes, to pay this judgment, they will not be able to force payment out of their principals, the Knoxes ; and it is apparent from the record that the Knoxes assigned the unsatisfied balance of the Fisher decree to complainant Goddard, without consideration, and that he in turn has divided it among his cocomplainants as a shield to protect the Knoxes from the William R. Duff judgment.   The result is, that if the complainant's case shall fail, the Knoxes will have ultimately to pay the W. R. Duff judgment ; but if the complainant's case shall succeed, the Knoxes are aided by a Court of Equity to avail themselves of the fruits of the fraudulent assignment made by Fisher to them—an assignment declared and adjudged, as we have seen in the case of William R. Duff against Fisher and the Knoxes, to have been made fraudulently, and for the purpose of swindling the creditors of said Fisher, of whom William R. Duff was one.

*Shafters & Goold*, for Respondents.

Counsel state, that " the foundation of the case set up by the respondents is, that they have become and are the assignees of a certain judgment rendered in favor of one Fisher against James T. Ryan, James R. Duff, and others," and " submit that no such judgment has been rendered."

We do not conceive that it is at all necessary for the plaintiffs to establish, that their offset has taken the form of a personal judgment.   Other claims than personal judgments may be set off in equity.   " The Court of Chancery was possessed of the doctrine of set-off, as grounded upon principles of equity, long before the law interfered."   (2 Story's Eq. Sec. 1432.)

Lord Mansfield has expressed his views on the subject in the following language :   " Natural equity says, that cross demands should compensate each other by deducting the less from the greater." In *Lindsay et al.* v. *Jackson et al.* (2 Paige, 581), the complainants filed their bill for the purpose of enforcing an acceptance as a set-off, and prevailed—the defendants holding promissory notes against the plaintiffs, under-due.   The defendants were insolvent.

In *Bigelow* v. *Folger* (2 Met. 255) the defendant was allowed to set off a promissory note not due when the suit was commenced.

The plaintiff was insolvent. In *Striker's case* (1 Bland. 79) a claim for rents and profits was set off in equity against a claim for improvements. In *Decatur Railroad* v. *Rhodes* (8 Ala. 206) a claim for money paid was allowed as an equitable set-off. *Stennet* v. *The Branch Bank at Mobile* (9 Id. 120) held, that "upon a bill filed for an equitable set-off, the right does not depend upon the question, whether both demands have been liquidated by judgment or decree." In *Stephens* v. *Fowler* (9 Paige, 280) a debt not in judgment was allowed to be set off. In *Blake et als.* v. *Langdon et al.* (19 Vt. 485), the equitable set-off was not in judgment. In *Naglee* v. *Palmer et al.* (7 Cal. 543), the offsets had not passed into judgment—they had been merely filed and reported upon. The foregoing authorities clearly establish, that every description of counter-claim, if liquidated, can be made the subject of equitable set-off.

Now, in the foreclosure suit of *A. K. Fisher* v. *The Humboldt Lumber Manufacturing Co., James T. Ryan, and James R. Duff et als.*, there was a decree or judgment past all doubt. It is adjudged that there was due on the bond and mortgage $33,820— and this adjudication is admitted by counsel in terms. And it was further adjudged that the lands mortgaged should be sold for its payment. Part has in fact been paid in the mode designated, and part in fact remains unpaid. Now the complaint does not say that the decree is a "personal judgment," a "money judgment," or any other kind of judgment. It simply calls it "a judgment"— sets it out in *hæc verba*, and leaves the question of its effect to be determined by the Court. Nor does the complaint allege that the plaintiffs have a personal judgment, or any judgment, for the alleged balance constituting their set-off. The allegation is that there was "a judgment and decree for $33,820, as due upon the bond and mortgage." And the allegation is true, even if the judgment was *in rem*, or *quasi in rem*. The complaint alleges further that there is "a balance due and unpaid on that judgment, amounting to $17,248.89 and interest." And is not that allegation true also? Cannot an "unpaid balance" be predicated of a judgment *in rem* or *quasi in rem*, as well as of a promissory note, or bond, or judgment *in personam?* (20 Ala. 825; 27 Id. 423; 8 Geo. 354; 3 Port. 35.)

*Hobbs v. Duff.*

We shall assume, then, that what we have alleged is true—that is, the fact of " a balance of a decree unpaid."  Admit, now, that there is no subsisting personal judgment for that balance, does it follow that we have no remedy for its recovery ?  Is it true that we can do nothing until we have a personal judgment to start with ?  If so, then, having no personal judgment, we cannot start at all. The objection obviously assumes that nothing can be relied on as the foundation of an equitable offset except a personal judgment; whereas, the cases cited establish that every description of contract and record claim due in law or equity, may be so presented.  Assuming that our balance has not as yet taken on the form of a personal judgment, can it not be made to take on that form in this proceeding ?

By the settled practice of the American Chancery, an unsatisfied balance due on a foreclosure decree containing no provision for the payment of a deficiency, may, on the ground that it is equitably due from the party, be subjected to the form of a personal judgment by a petition, or, more properly perhaps, by supplemental bill ; and it follows that if the party from whom such balance · is equitably due should sue the party to whom it is equitably due upon a bond or other contract claim, the defendant could tender his equitable counter-claim in offset, and in that behalf might set out the decree as it was entered, admit part payment according to the method of the judgment, characterize his equitable counter-claim as " an unsatisfied balance equitably due upon the decree," and seek a judgment from the Court upon that question.

The complaint does not attempt, in form, to make a case of " debt " upon an existing personal judgment.  It sets forth a detail of facts instead, and they show all the conditions of a valid personal claim upon our debtors *in personam*, and that is sufficient for our purpose.

But the complaint and the exhibits annexed do show a personal judgment against James T. Ryan, James R. Duff, and the ten other persons parties to the foreclosure in question.  To find out what was adjudged, we must go to the record of the judgment as it was actually made up.  The decree recites " that the Court, on the twelfth day of September, 1857, referred the matter to Lewis

Wood, Esq., Clerk of this Court, to compute, ascertain, and report to this Court the amount of principal and interest due the said plaintiff on the bond and mortgage set forth in the complaint; and the said referee having this day made his report, showing that there is this day due on the said bond and mortgage the sum of $33,820 ; and on reading and filing his said report, and on motion of Thomas Hanna, attorney of said plaintiff, it is ordered by the Court that the said report be confirmed."

The decree then proceeds in common form to "adjudge and decree" that the mortgaged premises be sold ; and to "adjudge and decree" that out of the proceeds certain special charges shall be paid ; and then to "adjudge and decree" that out of the same proceeds the "said sum of $33,820 shall be paid, with interest thereon, or so much of said sum as the residue of the proceeds will pay ; and then to "adjudge and decree," if there should be a surplus, that the Sheriff shall pay it into Court ; and then to "adjudge and decree" that "if the proceeds be insufficient to pay the amount of said debt, interest and cost, the Sheriff shall report the amount of such deficiency or balance ; and then, finally to "adjudge and decree" that "therefor the plaintiff have execution" against the debtors, naming them by name.

This was a proper decree, as this Court has already repeatedly decided ; but no matter how erroneous it may be, it cannot be attacked collaterally. For all the purposes of this case, it is to be treated as a valid and final judgment upon all the points adjudged by it.

The right, and the extent of the right, having been ascertained by the report of the Referee, as by the verdict of a jury, the decree, in view of the facts so found, takes up the subject of relief, and "decrees and adjudges" upon it under three distinct aspects :

1st. The mortgage property shall be sold, and the proceeds be applied in satisfaction of the debt.

2d. But there may be a surplus ; and if there be, then let it be paid into Court, there to remain subject to the Court's order.

3d. But there also may be a deficiency. Should there be one, let the Sheriff report it and the amount of it, and then on this, the last of the three alternative aspects, the decree adjudges "that the

plaintiff have execution therefor against the debtors in the suit by name."

Courts of Equity do not administer justice "by halves." They aim to exhaust the cases with which they deal. Their decrees for relief are not confined in their range to facts that have formed themselves into actual combinations, existing at the time the Chancellor utters his judgment, but they project themselves into the future ; and anticipating other, and all other combinations of facts that may arise by legal possibility, proceed to adjudge in advance the legal consequences that shall attend upon them when they actually occur. It is mainly in the fact that its decrees can be thus molded, that the excellency of the chancery jurisdiction consists.

Among other possible predicaments, the Chancellor, in the foreclosure case, foresaw that there might be a " balance " unsatisfied by the proceeds of the sale—the existence and amount of which might be made manifest by the Sheriff's return—as in returns upon execution at common law—and acting in advance upon such possible predicament, he in so many words " adjudges and decrees that the plaintiff have execution therefor against the defendants " by name. Here is a judgment at least. The language not only imports it, but demonstrates it. It is not a judgment *in rem*, and it remains that it must be a judgment that the " balance," when ascertained in the manner pointed out by the decree, should be paid by the debtors out of their estates at large. This is a contingent judgment *in personam*, or it is nothing, and words have lost their meaning. The form of words used in the utterance of this judgment, as well as the power of the Court to render the judgment itself, are fully vindicated by the two hundred and forty-sixth section of the Practice Act :

" The Court shall have power by its judgment to direct a sale of the property, or any part of it—the application of the proceeds to the payment of the amount due on·the mortgage, and execution for the balance."

It is of no moment that the report of the Sheriff was not " confirmed " by the Court, for the decree does not require it. Perhaps it ought to have required it, but it is quite certain that it

does not. It is of no moment that an order was not procured for execution, for the decree in terms doomed the defendants to execution as a sequence following instantaneously upon the filing of the report, and in that particular it followed the mode pointed out in the two hundred and forty-sixth section of the Practice Act.

But all the questions arising under the objection in hand have been settled by this Court in *Rollins* v. *Forbes and Wife* (10 Cal. 299) and *Brown* v. *Table Mt. M. Co.* (Id. 441).

The case of *Chapin* v. *Broder* (16 Id. 403) is not opposed to, but agrees with and illustrates the doctrine of the foregoing cases. The counsel contesting the judgment lien asserted in that case, admitted in their argument " that the decree in favor of Moss became a lien from the time of the Sheriff's return, and the filing of his report of sale showing that there was a deficiency," but insisted that " until then the judgment was contingent, and no execution could issue." The whole of the reasoning in the opinion shows that this view was adopted by the Court. They say that the "judgment is in abeyance until the contingency (named in the decree) is determined." And how determined here except in the mode and manner in which the decree has adjudged it shall be determined, viz.: by the filing of the officer's return showing the existence of a deficiency, and its amount ?

The Court further says : " It (such contingent judgment) may become a valid and perfect judgment ; but until the amount to be recovered is ascertained and fixed, no effect can be given to it as a lien."

In all the New York cases in which it has been held that execution could not issue for a balance reported by the Master until after the report had been confirmed, the decree in terms made such confirmation necessary. In our statutes there is no such provision.

But this question is no longer an open one, for in *Rollins* v. *Forbes and Wife* (10 Cal. 299) it was held, that where a personal judgment was in fact involved in the decree rendered in the foreclosure, and the avails of the sale had been credited by the officer making the sale and reporting a balance, " no further action of the Court would be necessary to ascertain the deficiency for which execution might issue." The only question open on this record is :

Does the Fisher decree involve such personal judgment? (5 Gill & Johns. 52.)

As a result we submit, that the plaintiff in *A. K. Fisher* v. *Ryan and Duff et al.*, had a contingent judgment *in personam* as soon as the decree was entered, and that judgment became an absolute judgment *in personam* as soon as the contingency transpired.

After confirming the Master's report, the decree, in the language of counsel, " adjudges the amount due on the personal obligation." What personal obligation? Certainly not the mortgage, for that acts merely upon the land. The only personal obligation disclosed by the papers, is the personal obligation evidenced by the bond which the mortgage was given to secure. The Court, then, " adjudged" the amount " due " upon the bond. But as " due " from whom? The only answer that can be given is, " due from the parties by whom the bond is signed." The decree, then, establishes by judgment that those parties were personally indebted to Fisher in the sum of $38,820, by reason of the bond, and that result, so affecting the obligors personally, is *res judicata*. The residue of the decree, in effect, adjudges that the already adjudged personal indebtedness shall be paid, and primarily casts the burden upon the lands mortgaged, and that resource coming short, and the amount of the deficit being ascertained by the report of a sworn public officer, execution therefor is to issue against the persons from whom that deficit, and a still larger sum originally, had, in the language of counsel, been " adjudged" to be " due" on the " personal obligation " evidenced by the bond.

Counsel state, that in *Chapin* v. *Broder* (16 Cal. 422), it was held there was no personal judgment. The decree in that case was the same as the Fisher decree. It was held that the decree in the first instance contained no such personal judgment as was necessary in order to work out the result of the " lien " on lands extraneous to the mortgage; but on looking into the facts of that case, the Court will see that the very point upon which the judgment of the Court below was affirmed was, that the balance, when reported by the Sheriff, became a judgment lien the moment the report was filed. If that case was rightly decided, then Fisher had a perfected personal judgment the moment that the Sheriff's

report was filed in the Clerk's office of the County of Humboldt. The result is that we are in the right in this matter, if *Chapin* v. *Broder* was rightly decided.

In commenting upon the case of *Clark* v. *Bell* (4 Dana, 16), counsel rely upon it as authority to show that " a final decree for money must specify the sum—not leave it to be ascertained by the Sheriff or Commissioner's report." It is sufficient to say that the decree here, and on the admission of counsel, too, does " adjudge the amount due upon the personal obligation." It does not, then, run into the vice of committing any question involving the exercise of judicial power or discretion to the Sheriff for solution. The Sheriff is required to sell and report, both of which acts are purely ministerial and clearly within the scope of his official duties. If counsel mean to contend that there can be no contingent judgment *in personam*, they are met by: (*Chapin* v. *Broder*, 16 Cal. 422; *McCarthy* v. *Graham*, 8 Paige, 480; *Rollins* v. *Forbes et ux.*, 10 Cal. 229; 10 Paige, 117).

But counsel say, that " it appears by the affidavit of one of the Knoxes, at page 68 of the Transcript, that the Knoxes have merely made a present to the complainants of the Fisher balance, by way of enabling them to set it up against the judgment on the appeal undertaking, if they can."

*Answer.*—The affidavit referred to shows that the balance due on the Fisher decree was not a gift or " present " by the Knoxes to the complainant, in the sense in which counsel evidently use the term; but, on the contrary, that the assignment was made by them on a valuable and highly meritorious consideration, viz.: to secure the complainants against their liability on the appeal bond, given by them at the request of the Knoxes, in the suit for specific performance ( *W. R. Duff* v. *Fisher et al.*)

It is said that the plaintiffs hold the Fisher " balance in trust for the Knoxes." The answer is, that the record shows that the trust is not a naked trust, but a trust coupled with an interest; and no trust at all except such as all sureties are affected with who take securities from their principals.

It is said, further, " if the set-off can be sustained, the Knoxes will be released from paying their sureties anything." The answer

to that, if any answer is required, is, that they will be so released for the reason that, by assigning to the plaintiffs the balance due them on the Fisher judgment, they have, in advance, put their sureties in funds wherewith to liquidate their liabilities, evidenced by the judgment upon the appeal bond. No one can complain, except Josephi, should the offset be allowed; but he took his assignment of the judgment on the appeal bond long after our equitable right to offset had vested. Josephi took his assignment subject to the vested equity of the plaintiffs to oppose their balance to it. (Practice Act, Sec. 5; *Gay* v. *Gay*, 10 Paige, 369; *Barber* v. *Spencer*, 11 Id. 517; *Wright* v. *Levy*, 12 Cal. 257.) As to the necessity of a written assignment, see *Ford* v. *Stewart* (19 Johns. 342), in which it was held, that " a judgment may be assigned by parol, or writing without seal." Same point in *Prescott* v. *Hall* (17 Johns. 284).

In *Ensign* v. *Kellogg et al.* (4 Pick. 1), the assignees of a bond sued for specific performance : *held*, that the obligors could not question the validity of such assignment on the ground that it was without consideration : that is a matter between the creditors of the obligee and the complainant.

Josephi is no " creditor " of our assignors, undertaking to set aside our assignment on the ground that it was made for the purpose of defrauding him, as a creditor, and driving us up to prove that we paid a full and adequate consideration for the " balance " assigned ; nor did he become interested as a " third person " until after the judgment on the appeal bond had been finally affirmed in this Court, March 7th, 1862. Sharp assigned to Josephi March 10th, 1862, and William R. Duff the trustee of our debtors, assigned to Sharp on the same day.

Again, the fallacy of the argument that the complaint will not support the injunction, for the reason that the character and amount of the consideration paid by the plaintiffs for an assignment to them of the balance due on the Fisher decree are not circumstantially stated, will more fully appear from the following considerations :

In the case of *Gilman* v. *Van Slyck et al.* (7 Cow. 469), cited by counsel, it was held, " that a judgment purchased by a party with a view to set it off, and with condition that if he fails to obtain

the set-off on motion, the assignment shall be void; and accompanied with a stipulation that the assignee shall be indemnified against the costs of the motion, cannot be set off." That case differs from this in every governing particular. Here, there was no such condition, nor was there any such stipulation. The assignment was absolute for all the purposes of indemnity to the sureties for whose benefit it was given.

As to *Satterlee* v. *Ten Eyck* (7 Cow. 480), we make out a case under the law of offsets as there expounded. The plaintiffs are not the "mere agents or trustees" of their assignors, but are the "absolute owners" of the balance which they assert, "holding the beneficial control" thereof in the largest measure that the law of pledges will admit of. Further on it is said by counsel, "that it is nowhere pretended in the record that the Knoxes are not amply able to repay the complainants, their sureties on the appeal bond, the whole amount that they may be compelled to pay as sureties." To this we submit the following replies:

According to all the cases, our right to offset in equity turns upon the insolvency of the parties who owe us the "balance," and it cannot be made to hinge upon the insolvency of the parties from whom we derived our title to that balance.

In *Walker* v. *Sedgwick* (8 Cal. 405), it was held as follows: "Insolvency may exist in a thousand cases where its existence cannot be proved at the time; and who would not prefer setting off his claim against that of another, rather than first pay the money out of his own pocket, and then risk getting it again from the pocket of his adversary?" The point decided in this case is identical in effect with that now under discussion.

The principles upon which judgments are held conclusive upon the parties, require that the rule should apply only to that which was directly in issue, and not to everything which was incidentally brought into the controversy during the trial. And it is only to the material allegations of one party that the other can be called upon to answer; it is only upon such that an issue can properly be formed, to which alone testimony can be regularly adduced; and upon such an issue only is judgment to be rendered. A record, therefore, is not held conclusive as to the truth of any allegations which

were not material nor traversable; but as to things material and traversable, it is conclusive and final.    (1 Greenl. Ev. Sec. 528.)

As a second estoppel, counsel insist " that in the suit Willliam R. Duff instituted against the plaintiff Goddard, it was in like manner adjudged that Ryan and James R. Duff had no interest on the side of William R. Duff in the matters out of which these matters have grown, and it is not pretended that they have since acquired any such interest."

To this objection we submit the following answer: Of the six plaintiffs in this action, one only of their number was party to the suit named in the statement of the objection, viz.: Goddard. That suit was commenced August 17th, 1860.    All of the plaintiffs became jointly interested in the offset now presented on the nineteenth of June previous; and it follows that inasmuch as Hobbs, Gilmore, Armes, Stephens, and Clark, were interested in the offset before, and at the time the suit referred to was brought, and were not made parties to it, that no judgment rendered in the suit could by possibility estop them.    Nor would Goddard himself be estopped by the judgment in any subsequent litigation involving the same subject matter in which he and his coöwners were made defendants jointly.    (2 Cowen & Hill's Notes, 2; *Baring* v. *Fanning*, 1 Paine, 549; *Chapman* v. *Chapman*, 1 Mumf. 398.)

The third estoppel relied on, is stated by counsel as follows: " In the suit upon the appeal bond where the same matters were set up which are now set forth in the complaint, it was determined that William R. Duff was the owner of the money now in controversy."    By " the money now in controversy," counsel doubless mean the money due on the judgment on the appeal bond.    That was an action at law by William R. Duff against the present plaintiffs, upon the appeal bond.

It is true that the offset now relied on was presented in that suit upon the same allegations substantially as those contained in the present complaint.    But by referring to the statement on new trial in that case, it appears that the defendants' evidence to prove that the appeal bond in suit belonged to James T. Ryan and James R. Duff, was excluded by the Court below, and that the question of fact was neither determined nor investigated.    The new trial asked

for was denied, and the decision was affirmed in the Supreme Court, on the ground that the offset not being due from William R. Duff, the plaintiff of record, the offset could not be urged in his action at law. (See *William R. Duff* v. *Hobbs et al.*, 19 Cal. 646.)

This suit is brought in another forum, and the fraudulent trustee and the fraudulent beneficiaries are all of them parties. A decision by a tribunal that it has no jurisdiction to entertain a particular claim, surely cannot preclude the claimant from litigating it on its merits before the tribunal within whose jurisdiction it falls.

We admit that the doctrine of "mutuality" and all the narrow conditions governing offsets at law, are equally binding in chancery, unless some peculiar equity is disclosed, and then the close technical rules that trammel offsets at law are entirely disregarded : and insolvency is one, and one of the most familiar equitable grounds upon which the larger jurisdiction of the chancery reposes. (*Naglee* v. *Palmer et al.*, 7 Cal. 543 ; *Russell* v. *Conway*, 11 Id. 93 ; *Barrett* v. *Barrett*, 8 Pick. 342 ; Barber on Set-Off, 210 ; *Jackson* v. *Robinson*, 3 Mason, 145 ; *Barber* v. *Spencer*, 11 Paige, 517 ; *Pond* v. *Smith*, 4 Conn. 302 ; *Robbins* v. *Holly*, 1 B. Mon. 194 ; *Chamberlin* v. *Stewart*, 6 Dana, 33 ; *Mitchell* v. *Oldfield*, 4 Tenn. 123 ; *Bigelow* v. *Folger*, 2 Met. 255 ; *Gay* v. *Gay*, 10 Paige, 369 ; *Simpson* v. *Hart*, 14 Johns. 53.)

*W. W. Stow*, for Appellants.

The judgment, if it be a judgment, which plaintiffs ask to have set off, was rendered, if at all, on a foreclosure. A part of the property covered by the mortgage then foreclosed, the plaintiffs in that action and the assignor of these plaintiffs, contracted to sell to Wm. R. Duff, provided he acquired title thereto by means of such foreclosure. Failing to comply with that contract, Wm. R. Duff brought suit and recovered a decree for specific performance, damages, etc. (*Duff* v. *Fisher*, 15 Cal. 376.) From that decree defendants Knoxes, plaintiffs' assignors, appealed to this Court, and these plaintiffs executed an undertaking on appeal, on which Wm. R. Duff also obtained a judgment which he assigned to Josephi. Fisher, plaintiffs' assignor, having contracted to sell and convey to

James R. Duff the mortgaged premises, equity would require him to convey them free and clear of the lien and incumbrance of said mortgage or any judgment for the deficiency. Having failed to perform until compelled by decree of the Court, and damages having been awarded against him for nonperformance, he cannot set off the mortgage decree against the judgment for those damages. They are but an incident to and the result of the contract which obliged him to convey discharged of that lien. If he had voluntarily performed the contract no judgment for damages would have been rendered against him. Not having performed, he cannot avail himself of the nonperformance as a means of collecting his pretended judgment for a deficiency on the mortgage foreclosure; *i. e.*, if he had conveyed he could not enforce the balance of the decree against Wm. R. Duff. Nor can he enforce it out of any claim arising from the contract. (*Moale* v. *Buchanan*, 11 Gill & Johns. 314.)

Josephi was not a party to the judgment sought to be set off, nor was his assignor, Wm. R. Duff. But the theory of plaintiff is, that he was trustee of the defendants in the judgment in the foreclosure suit. As such trustee it is said he made the contract; as such recovered the judgment (15 Cal. 376); as such recovered judgment on the undertaking on appeal.

We say plaintiffs are estopped from maintaining such theory. 1st. By contract, when plaintiff's assignor, Fisher, contracted directly with Wm. R. Duff. 2d. By the judgment *Wm. R. Duff* v. *Fisher et al.* In that action was the time to set up that Wm. R. Duff was the trustee, against the damages therein claimed by him (it being in equity), the set-off now sought to be enforced should have been claimed. (4 Johns. 510; 1 Id. 97, 98; 11 Cal. 212.) 3d. By the judgment *Wm. R. Duff* v. *Goddard.* Goddard at the time of that judgment was the owner of the judgment now sought to be set off. He assigned after that decree (which forbids him from selling on the plaintiff's mortgage foreclosure judgment) the property described; and he assigned the judgment sought to be set off to the present plaintiffs, he being one. 4th. By the undertaking on appeal on which the judgment assigned to Josephi was obtained. 5th. The relief which plaintiff seeks is bar-

40

red by Sec. 19 of the Statute of Limitations. "An action for relief not hereinbefore provided for, must be commenced within four years after the cause of action shall have accrued." (*Lord v. Morris*, 19 Cal.) The judgment, plaintiff seeks to set off, was rendered September 17th, 1857. This action was commenced March, 1862, more than four years after, and more than six years after Fisher, plaintiffs' assignor, discovered that Wm. R. Duff was trustee of James T. Ryan and another.

*Shafters & Goold*, in reply.

The legal proposition seems to be as follows: If A (A. K. Fisher) having a mortgage on lands of B (James T. Ryan and James R. Duff), the. mortgage standing as security for B's own debt, makes a contract with B (here nominally with Wm. R. Duff as the naked trustee of J. T. Ryan and J. R. Duff) that he (A) will convey to B the mortgaged lands if he (A) should become the owner of them under proceedings in foreclosure; A, in the event of his becoming the owner of the lands in the manner named, would be bound to convey them to B free from all lien for an unpaid balance of the mortgage, should there happen to be one. That conclusion may be safely admitted, for it is difficult to see how the purchaser, A, could have any lien on his own land for a balance due to himself. But after the title had vested in B by conveyance from A, why could not A collect his unpaid balance due to him from B, by levying it upon the particular land conveyed? Of what importance would it be to B, whether that particular land should be seized or some other property constituting a portion of his general estate, for the payment of an admitted debt? Or if A (here these plaintiffs in effect) was indebted to B (here James T. Ryan and James R. Duff in effect) in any money claim from book account up to final judgment (here the judgment on the appeal bond, in effect), why could not A (these plaintiffs in effect) offset his money " balance " against the adversary money claim due from his debtor? Dropping here the hypothetical case, the argument of counsel suggests no other reason than this: Fisher had to be compelled by proceedings to fulfill his agreement to convey the mills and the steam tug, and damages were assessed by a Court,

instead of being amicably assessed by the parties. Conceding that we have a personal judgment for our " balance ;" conceding that that balance has come to us honestly and on sufficient consideration; conceding further, that the judgment on the appeal bond to which our offset is now opposed, was the property of James T. Ryan and James R. Duff at the time when the plaintiffs so became owners of the " balance ;" conceding, in short, every point of fact which we claim, the hopeless insolvency of our debtors inclusive, counsel maintains that the plaintiffs cannot offset, for the reason that Fisher was contumacious in the matter of fulfilling his contract to convey, and that thereby he forfeited his right to offset; and that the bar was not limited to him, but affects " his heirs, administrators, and assigns, forever." For this conclusion no case is cited and no principle is adduced. The case from 11 Gill & Johns. 314, has not, as we conceive, any bearing upon the point. But another objection is made by counsel, under title fourth, not taken in the leading brief; it is, that Fisher should have pleaded in offset the balance of his foreclosure decree, in the suit for specific performance of his contract to convey the mills and tug; and that not having done so, neither he nor his assigns can bring an original action to enforce the offset. The case cited from 11 Cal. 212, has obviously no bearing on this proposition, neither has the case cited from 4 Johns. 510, nor the case from 1 Id. 97. It is perfectly well settled that a party having an offset at law may present it in a suit against him at law, or forbear to do so in his election, and without prejudice to any of his legal or equitable remedies. This point is so thoroughly established by the authorities that it cannot be considered an open question. (Barb. on Set-Off, 21.) In this matter equity doubtless " follows the law."

But again: Fisher could not have offset his " balance " in the suit of *W. R. Duff* v. *Fisher and Knoxes* for specific performance and account, without the help of the " equitable circumstance " furnished now by the insolvency of the parties from whom that balance was due. If he had attempted it, he would have grounded on the shoal of " mutuality." Now, it nowhere appears in this record that those parties were insolvent at the time when that suit was brought or while it was pending. How then, can

counsel say that Fisher could have pleaded his balance in offset in the suit referred to ?    But counsel further along, refers to the suit of *Wm. R. Duff* v. *Goddard and Sheriff Van Ness* (to enjoin the threatened sale of the Humboldt mill on an execution for our "balance"), and argues that because that suit settled the title to the saw-mill, it in effect settled the title to the money judgment on the appeal bond.    This position we do not propose to review a second time, and refer to it now for the purpose of correcting an error of fact into which counsel has inadvertently fallen. There was no decree forbidding Goddard to sell the "balance" of the Fisher decree now raised as an offset.    He was enjoined to refrain from selling the mill, which we take to be a different thing altogether.

Again, it is asserted that Goddard assigned an interest in the set-off to his cosureties and coplaintiffs, after the decree in the *quia timet* suit referred to.    That is a mistake; for as we have already shown by the record, the plaintiffs became joint owners of the set-off forty days before the *quia timet* suit was brought. Counsel, under the fourth head in his brief, contends that we are estopped from asserting our offset by the "undertaking on appeal." The proposition is not illustrated by any comment, and it would be idle for us to conjecture the grounds upon which it was advanced by counsel, and then proceed to answer the grounds so conjectured. We do not deny the bond, nor any of its recitals; and the entire validity of the judgment rendered upon it against us is admitted in the very theory of this action.    Counsel further insists that plaintiffs are estopped by the contract on which the suit for specific performance was based, from saying that our debtors Ryan and Duff were the beneficial owners of it; but no reasons for this opinion are given or suggested, except as it is said that Fisher contracted with Wm. R. Duff.    The answer is, that we do not deny now anything which that contract provides for, or asserts, or manifests. Among other things, the paper demonstrates that the contract, as written, runs to W. R. Duff, but it does not show, nor undertake to show, who the persons were at whose instance or for whose benefit the contract was in fact made.    The difficulty relied on by counsel was considered and disposed of judicially in the case of *Barrett* v.

*Barrett* (8 Pick. 342), and in *Naglee* v. *Palmer* (7 Cal. 543). Under the fifth head of the brief, counsel defend on the ground of the Statute of Limitations.   It is true that this action was commenced more than four years after the rendition of our judgment, but it is also true that it was less than five years by seven months. The statute runs from the date of the judgment, past all doubt, and that was October 10th, 1857 ; the date of the Sheriff's return showing the amount of the unsatisfied balance that we now seek to have offset against the judgment on the appeal bond.   The case, then, in our view of the matter, comes to this :   The plaintiffs are at law the absolute owners of a claim against J. T. Ryan and James R. Duff of the amount of about $55,000, and they are the equitable owners thereof, as sureties, for all the purposes of indemnity. We seek to offset it against a judgment now the property of Josephi, but which belonged to our debtors at the time when we took our claim by assignment.   We are not estopped from proving that the adversary judgment was the property of our debtors at the time named, by any record that has been produced, for in none of them is that question even alluded to, except one (the action on the appeal bond), and in that record it appears that the question, for technical reasons, was not tried.   The suit failed for the reason, as this Court held, that the offset could not be enforced in a Court of Law.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. concurring.

This is an appeal from an order granting an injunction, in an action in the nature of a suit in equity, for a decree setting off a certain demand owned by the plaintiffs, against a demand owned by Josephi, one of the defendants.

The record discloses these facts, that on the fifteenth day of September, 1857, one Fisher obtained a decree for the foreclosure of a mortgage upon certain real and personal property in the District Court of Humboldt County, against one Ryan, J. R. Duff and several others ; that the mortgaged property was duly sold under the decree ; and after the application of the proceeds upon the amount of the mortgage debt found due by the decree, there was a defi-

ciency or balance of $17,248.89; that May 9th, 1858, Fisher assigned this balance, due on the decree, to R. & F. Knox, and May 10th, 1860, they assigned it to one Goddard, who, on the nineteenth day of June, 1860, assigned the undivided half to his associate plaintiffs in this action. This is the demand the plaintiffs claim the right to use and apply as a set-off—the sum due thereon with interest amounting to $53,977.63, at the commencement of this action.

The complaint states, that on the twenty-third day of February, 1856, Fisher entered into a contract with the said Ryan and J. R. Duff, two of the defendants in the decree of foreclosure, for the conveyance of the mortgaged property, should he acquire the title to it; but that Ryan and J. R. Duff, for the purpose of defrauding their creditors, had the contract made in the name of W. R. Duff, instead of their own, the latter being privy to the fraud; that an action was brought thereon, in the name of W. R. Duff, against Fisher, the Knoxes and others, to compel a specific performance, and an account of the rents and profits, in which a final decree was rendered in favor of W. R. Duff against the defendants, for a specific performance of the contract, and for damages in the sum of $13,566.99; that the Knoxes appealed from this judgment·to this Court, and the plaintiffs in the present suit became their sureties on the appeal bond; that the judgment was affirmed on appeal, and W. R. Duff brought an action on the appeal bond, in which he recovered judgment against the plaintiffs in this action, on the twenty-third day of August, 1861, for $16,900, and they aver that Ryan and J. R. Duff procured all these actions, and proceedings to be had, in the name of W. R. Duff, who acted as a mere naked trustee for them, they being the real owners of the judgment against the plaintiffs. W. R. Duff assigned this judgment on the tenth day of March, 1862, to one Sharp, who, on the twelfth day of March, 1862, assigned it to the defendant Josephi. It is this judgment that the plaintiffs seek to have set off and satisfied, by having the amount thereof credited on the larger judgment held by them. The injunction is to restrain the defendants from enforcing this judgment against the plaintiffs.

The first point raised by the appellants is, that the decree assigned to the plaintiffs is not a money judgment, and therefore does not

form a proper foundation of an action for a set-off.   The decree is rendered in a form in very common use in the Courts of this State. It recites that the Court referred the case to the Clerk of the Court, to compute and report the amount of principal and interest due on the bond and mortgage ; that the referee had reported due thereon the sum of $33,820, and then "it is ordered by the Court that the said report be confirmed."   It then proceeds and decrees, that the mortgaged premises be sold; that out of the proceeds certain charges be paid, and the " said sum of $33,820 shall be paid," with interest thereon ; that if there be a surplus, the Sheriff shall pay such surplus into Court; that if the proceeds should be insufficient to pay the said debt, interest and cost, the Sheriff shall report the amount of such deficiency or balance, and that "therefor the plaintiff have execution " against the defendants. The Sheriff, after the sale, duly reported the balance due as before stated.   This decree appears to be in strict accordance with Sec. 246 of the Practice Act, as it stood at the date of the judgment, by which it was provided, that the " Court shall have power, by its judgment, to direct a sale of the property, or any part of it; the application of the proceeds to the payment of the amount due on the mortgage, lien, or incumbrance, with costs, and execution for the balance." The right of the plaintiff, in foreclosure suits, to a personal judgment for the amount of the debt, under this section, was established by the decisions of this Court in: (*Rollins* v. *Forbes*, 10 Cal. 299 ; *Brown* v. *Table Mountain Water Co.*, Id. 441 ; *Rowland* v. *Leihy*, 14 Id. 156 ; *Cormerais* v. *Genella*, 22 Id. 116.)   But in those cases there seems to have been a direct decree, that the defendants pay, or that the plaintiff recover the amount found due— which is not found in the decree we are now considering.   In this respect it is like the decree passed upon in *Chapin* v. *Broder* (16 Cal. 403).   In that case the judgment had been docketed at the date of its rendition ; and the question was at what time the lien of the judgment attached upon the lands in controversy ; and it was held, that until the amount of the deficiency had been ascertained after a sale, the amount of the judgment was uncertain and indefinite ; and that no effect could be given to it, beyond a sale, so long as this uncertainty continued.   The question before us is,

whether, in such a decree, there is a judgment for the amount of the deficiency when it has been duly ascertained by a report of the Sheriff, with the usual qualities of a judgment at law, or a decree in equity for the payment of money ?   That question was not directly decided in *Chapin* v. *Broder ;* but the language used by the Court would seem to imply, that such was their opinion ; and that the docketing of such a judgment would make it a valid lien on the property of the defendants, from the time the deficiency was duly ascertained—but could not date prior to that time.   The fact that the statute does not require, in such cases, a direct personal decree for the payment of the money, and yet authorizes an execution to issue for the balance, would give a decree, rendered in accordance with its provisions, one of the highest and most important attributes of a money judgment—the foundation of an execution to enforce its collection ; and a sale of property, under such an execution, would certainly convey a valid title.

But it is unnecessary for us to determine what is the character and quality of such a judgment, further than as it may apply to the present case.   We think it clear that the original debt is merged in such a judgment, at least so far as to make it a certain and liquidated demand, existing at the date when the amount was ascertained, sufficient as a foundation of a right of action or set-off. The principle is well settled, that it is not necessary that the demand sought to be used as a set-off should be in the form of a judgment.

It appears from the record, that prior to the suit for a specific performance, Fisher had conveyed the mortgaged property which he had purchased, to the Knoxes, and they were therefore made parties to the action, it being alleged that the sale was fraudulent and void, and that the Knoxes were therefore bound by Fisher's contract to convey.   This issue was found in favor of the plaintiffs in that action ; and the decree, therefore, was rendered against the Knoxes.   The appellants contend that the assignment of the judgment by Fisher to the Knoxes was without consideration, and fraudulent, and that the decree in the action for a specific performance was an adjudication to that effect, binding upon the plaintiffs, and vitiating the judgment in their hands.   It is a sufficient answer to this, to say that the assignment of this judgment by Fisher to the

Knoxes formed no part of the matters in controversy in that action, and no judgment was entered affecting it in any way. It is also urged, that this assignment of the judgment by the Knoxes to the plaintiffs was made without any consideration. It appears from the record, that it was made for the purpose of securing the plaintiffs against their liability on the appeal bond, which they executed as sureties for and at the request of the Knoxes. This is clearly a sufficient consideration to support the assignment. It is both a valuable and adequate consideration.

The assignment is not conditional, as was the case in *Gilman* v. *Van Slyck* (7 Cow. 469). The Knoxes are the principals, as to the liability of the plaintiffs to William R. Duff, and it was their duty, as such principals, to secure and protect their sureties. The assignment of the balance due on the judgment for that purpose was proper and valid, and should be sustained accordingly. It is urged, that the Knoxes are attempting to save themselves from their liability upon the money judgment rendered in the action for specific performance, through the complainants, by means of their assignment. If such should prove to be the case, we do not see what difference it can make as to the rights of the parties in this action. If the Knoxes have a just demand, which is an equitable set-off to the judgment held against them by William R. Duff, what rule of equity is violated by allowing them, or their sureties for them, to maintain an action for that purpose ? If William R. Duff is not the real owner of the judgment against the Knoxes, but is the mere trustee for Ryan and J. R. Duff, who are the beneficial owners, he is not injured in any way by the set-off; and the latter are not injured, for the judgment is applied in payment of an equal amount justly due from them, which is the object sought to be accomplished by a set-off. Indeed, we are not sure that if the Knoxes had not assigned the judgment to the plaintiffs, but still held it, the latter could apply to a Court of Equity to compel a set-off, to relieve them from the payment of their liability. That, however, is a question not before us. It is sufficient for the purposes of the present case, to say, that the assignment was for a proper and valid purpose, and made upon a good and sufficient consideration.

It is also urged, that Josephi purchased the judgment against the

plaintiffs in good faith, and for a good and valuable consideration, and is therefore entitled to protection against the claim to set-off. This judgment, which was rendered August 23d, 1860, was assigned by Wm. R. Duff to one Sharp, March 10th, 1862, and Sharp assigned the same to Josephi, March 12th, 1862. But the judgment claimed as a set-off by the plaintiffs was assigned to their principals, the Knoxes, May 9th, 1858, and was assigned by them to Goddard, May 10th, 1860, and by him to the other plaintiffs June 19th, 1860 ; so that the right of set-off claimed by the plaintiffs existed at the date of the judgment against them, and the subsequent assignees of that judgment took the same subject to the right of set-off. (Pr. Act, Sec. 5 ; *McCabe* v. *Grey*, 20 Cal. 509 ; *Wright* v. *Levy*, 12 Id. 257.) But Josephi cannot justly claim that he is a purchaser without notice of this claim of set-off asserted by the plaintiffs. As assignee of the judgment, he is deemed to have notice of all matters disclosed by the record and proceedings in the action in which the judgment was rendered. The record in that action discloses the fact of this claim of set-off, which the plaintiffs in this action attempted to use as a defense to that action ; but the Court in that case ruled it out as a defense, on the ground that that action was strictly at law, and the defense did not come within the provisions of Sec. 47 of the Practice Act. (*Duff* v. *Hobbs*, 19 Cal. 646.) The Court in that case, however, did not hold that the plaintiffs had no remedy in equity. The defendant Josephi, therefore, had full notice of the equitable claim of set-off of the plaintiff, and he cannot, therefore, claim the rights of a *bona fide* purchaser in this action.

The appellants also contend that the complaint is defective, as it does not allege that the Knoxes are insolvent, or that they are not able to repay to the plaintiffs the amount they may be compelled to pay as sureties. It is the insolvency of Ryan and J. R. Duff, the persons who owe the debt claimed by the plaintiffs as a set-off, and not that of the Knoxes, that is the material question upon this point. Their insolvency is averred, and does not seem to be disputed. It is the fact that they are the real owners of the judgment against the plaintiffs ; that they are insolvent, and therefore the only means of collecting the judgment due from them to the plaintiffs is by the

set-off, that forms one of the chief grounds for the interference of a Court of Equity. The parties named in the record of these two judgments are not the same, and therefore a Court of Common Law jurisdiction cannot make the set-off; but a Court of Equity will look beyond the nominal to the real parties in interest, and adjudicate the rights of the parties accordingly. The interposition of a trustee will not prevent a Court of Equity from reaching his *cestuis que trusts*, when all the parties are before it, and compel them and the trustee to allow a set-off, even though such relief could not be granted by a Common Law Court. A Court of Equity will not permit *cestuis que trusts*, who are insolvent, to enforce and collect, through their trustee, a judgment against parties who hold a just and valid demand against them, which they have no means of enforcing or collecting if a set-off is denied. (*Walker* v. *Sedgwick*, 8 Cal. 405; *Russell* v. *Conway*, 11 Id. 93; *Naglee* v. *Palmer*, 7 Id. 543; *Howard* v. *Strous*, 20 Id. 277.)

The next point of the appellants is, that the plaintiffs are estopped from showing that Ryan and J. R. Duff are the real owners of the money due on the judgment against them, by the judgment in the action for a specific performance brought by Wm. R. Duff against Fisher and the Knoxes. An examination of the record in that case shows, that no question of that kind was raised by the pleadings, and no judicial determination of the point raised in this action was had in that. The plaintiffs in this action could not be barred from setting up this fact as the foundation of their right of action, unless it was clearly shown that the same matter was in issue in the former action and adjudicated by the Court therein. No such adjudication being shown, the plaintiffs are not estopped by the decree in that case.

It appears, that after the assignment of the judgment in the foreclosure suit by the Knoxes to Goddard, the latter issued execution thereon and had it levied upon a mill in Humboldt County. Wm. R. Duff brought suit against him and the Sheriff to enjoin the sale, on the ground that he was the owner of the mill, and that the execution defendants, Ryan, J. R. Duff, and others, had no interest in it. Goddard answered, denying these averments of the complaint, and alleging that the execution defendants were the beneficial owners

of the mill.   The action does not appear to have been defended by Goddard any further than filing the answer, and the plaintiff recovered judgment therein ; and the appellants insist that the plaintiffs are also estopped by this judgment from showing that Wm. R. Duff is the trustee of Ryan and J. R. Duff, of the judgment against the plaintiffs, or that they are the real owners thereof.   The subject matter of that action was the mill, and not the debt due or the judgment rendered on the appeal bond.   The two are entirely separate and distinct matters, and a judgment settling the question, as to the ownership of the mill, cannot in any way determine the question as to who is the real owner of this judgment against the plaintiffs.   This point is therefore untenable.

But, it is insisted, that they are also estopped from showing the same facts by the judgment rendered against them on the appeal bond, because in that action they set up the same matters alleged in this suit, as a ground of set-off or counter claim.   The record, however, shows that the Court in that action excluded all evidence tending to show that Ryan and J. R. Duff were the real owners of the amount due on the appeal bond, and the action of the Court below was sustained by this Court for the reasons before stated. (*Duff* v. *Hobbs*, 19 Cal. 646.)   It was then held that these matters could not be adjudicated in that action.   The record shows that they were not adjudicated, and it follows that the judgment therein cannot be pleaded or claimed as an estoppel in this action. Although a Court of Law declines to determine a question of set-off, yet it is not *res judicata*, so as to preclude an inquiry in a Court of Equity.   (*Hackett* v. *Connett*, 2 Edw. Ch. 73.)

The next position is, that the rules of set-off are the same in equity as at law.   It is true, that Courts of Law and Equity follow the same general doctrines on the subject of set-off; but where some equity intervenes, independent of the fact of mutual unconnected debts, Courts of Equity will take jurisdiction, and determine the matter upon the principles of natural equity.   And when the law could not give a proper remedy, as in case of the insolvency of one of the parties, equity will afford relief. (Barb. on Set-Off, 190 ; *Lindsay* v. *Jackson*, 2 Paige, 581.)   The demands in this case are judgments, and the aid of a Court of Equity is

invoked because the defendants in one of the judgments are insolvent, and the plaintiff in the other is not the real party in interest, but a trustee for the insolvent defendants in the other judgments. Each of these facts forms a ground for applying to a Court of Equity, and entitles the plaintiffs to equitable relief.   On a complaint filed to set off one judgment or decree against another, the jurisdiction of a Court of Chancery is more extensive than that of Common Law Courts.   In equity, a set-off in such cases is a matter of right, and not of discretion, and it depends, not upon the Statutes of Set-Off, but upon the equitable jurisdiction of the Court over its suitors.   (Barb. on Set-Off, 194.)   And the set-off will be allowed as between the real parties in interest, regardless of a nominal party.   ( O' Conner v. Murphy, 1 H. Blackstone, 657.)   A person who holds a claim as a trustee, cannot have it set off against a demand due from him in his own right.  (Fair v. McIver, 16 East, 130.)   And upon the same principle, we think it clear that a set-off should be made in equity as between the real parties in interest, even though one of the judgments is in the name of a trustee who holds for the use and benefit of such real parties.  ( Wolf v. Beales, 6 S. & R. 242; Barb. on Set-Off, 61, 71–73.)   In other words, the Court will decree a set-off as between the real owners or persons beneficially interested in the several demands.   (Russell v. Conway, 11 Cal. 93.)

Another position taken by the appellants is, that Fisher should have pleaded the balance due on the judgment of foreclosure, as a set-off against the damages in the action brought by Wm. R. Duff against him and the Knoxes for a specific performance; and not having done so, the plaintiffs claiming under him are estopped or barred from maintaining this action.   If he had so pleaded it in that suit, it would probably have been held, that the Court could not entertain the defense or allow the set-off in that action, on the same grounds that it was ruled out in the subsequent action of Duff v. Hobbs (19 Cal. 646).   But independent of that, it is clear that a party does not lose his right to bring a separate action for a demand which he might have pleaded as a set-off, but neglected to do. (Barb. on Set-Off, 21.)

It is also insisted that the action is barred by the Statute of Lim-

itations, it having been commenced on the seventeenth day of March, 1862, and the judgment which the plaintiffs seek to set off having been rendered September 17th, 1857. This is substantially " an action upon a judgment or decree," and is therefore governed by Sec. 17 instead of Sec. 19 of the Statute of Limitations, as claimed by the appellants. The action having been brought within five years from the date of the decree, it is not barred by the statute. We have thus examined all the questions raised by the appellants, and find no error in the action of the Court below.

The order granting the injunction is therefore affirmed.